STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ROBERT MEINKEN, DEFENDANT-RESPONDENT.

Argued October 6, 1952—Decided October 27, 1952.

*Mr. Robert Carey, Jr.,* Deputy Attorney-General, argued the cause for the appellant (*Mr. Theodore D. Parsons,* Attorney-General).

*Mr. Gabriel Kirtzenbaum* argued the cause for the respondent (*Mr. Perry J. Martin* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J. On December 16, 1950, the defendant was arrested and charged with violating *R. S.* 23 :4–44, as amended, by possessing an illegal missile while hunting deer, and with violating *R. S.* 23 :4–24.1 by having a loaded shotgun in his car. At his trial before the Municipal Court of South Brunswick Township the defendant pleaded guilty to both offenses and was accordingly convicted and fined $100 and $5 costs for the violation of *R. S.* 23 :4–44, and $20 and $5 costs for the violation of *R. S.* 23 :4–24.1. The defendant paid both fines. Subsequently, however, he took an appeal to the Middlesex County Court from his conviction for possessing an illegal missile in violation of *R. S.* 23 :4–44. Pursuant to *Rule* 2 :11 (*h*) (1) a trial *de novo* was had, the defendant found guilty and a fine of $100 plus $5 costs imposed. From this judgment of conviction the defendant appealed to the Appellate Division of the Superior Court which reversed· the County Court. We then granted the State's petition for certification to review the decision of the Appellate Division, 9 *N. J.* 611.

The facts are not in dispute, being set forth in the County Court's statement in lieu of record apparently filed in accord-

ance with *Rule* 1:2–22. On December 16, 1950, which was during the hunting season for deer, the defendant left his home in New Brunswick by car for the sole purpose of hunting deer. Shortly before noon the defendant was stopped by a state game warden on New Road in South Brunswick Township. Beside him on the front seat of his car the defendant had a .12 gauge shotgun loaded with two shells containing buckshot and in his trousers pocket he had a .12 gauge shell loaded with one ounce solid ball. New Road at the point where the defendant was stopped is an unimproved dirt road maintained by the township. On either side of the road are undeveloped woods and fields devoid of buildings and structures. The area is one where wild deer are customarily found and hunted, and at the time when the defendant was apprehended others were engaged in hunting deer in the immediate vicinity.

The pertinent parts of *R. S.* 23:4–44, as amended, which the defendant was charged with violating provided that:

"Unless otherwise prescribed by the State Fish and Game Code, no person engaged in hunting for wild deer shall use or carry a rifle of any kind or description, or any firearm or shotgun of a smaller caliber than twelve gauge, or load such firearm or shotgun with a bullet or other missile larger than that commonly known as buckshot, or have in possession in the woods or fields during the open season for killing deer any missile except buckshot or have any missile larger than number four shot in possession in the woods or fields at any time other than during the open season for killing deer; * * *."

The only question presented to us on this appeal is whether the defendant at the time he was apprehended was "engaged in hunting * * * in the woods or fields," it being conceded that the shell loaded with a one-ounce solid ball which the defendant had in his possession is a missile of the type forbidden by the statute.

In resolving this question the State urges that we construe the words of the statute liberally so as to promote the public policy of the State in conserving its natural resources and in protecting the safety of its people. In 3 *Sutherland*

*Statutory Construction* (*3rd ed.* 1943), § 7214, *p.* 445, it is stated:

"Of great public importance are laws providing for the conservation of natural resources and thus they are given a liberal construction. Statutes of this sort are fish and game laws, and legislation regulating waste of mineral resources."

But the defendant points out that the statute before us is penal in nature and urges that we apply the well recognized rule that penal statutes are to be strictly construed. *Mayor, etc., of Alpine Borough v. Brewster,* 7 *N. J.* 42, 50–51 (1951); *State v. Labato,* 7 *N. J.* 137, 148 (1951). We note in this regard the case of *State v. Zellmer,* 202 *Iowa* 638, 210 *N. W.* 774 (*Iowa,* 1926), wherein the court said:

"The section is a part of the fish and game laws of the state, all of which, so far as *in pari materia,* should be considered in arriving at the intent of the Legislature in its enactment. The section also is penal, and its provision should be strictly construed."

 There is no real conflict between these two well recognized rules of statutory construction, for all penal statutes are enacted and enforced in the public interest. Where a law or group of laws are both remedial and penal, as the fish and game laws clearly are, those provisions which are remedial are to be liberally construed and those that are penal are to be strictly construed, *Maellaro v. Madison Finance Co. of Jersey City,* 130 *N. J. L.* 140, 144 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 160 (*E. & A.* 1944). The rule of strict construction applicable to the penal provisions of a statute, however, does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed or prevent a court from giving effect to the terms of the statute in accordance with their fair and natural acceptation. While a penal statute is not to be extended by implication or intendment, its clear implication and intendment is not to be denied. *State v. Brenner,* 132 *N. J. L.* 607, 611 (*E. & A.* 1945); *Mayor, etc., of Alpine Borough v.*

*Brewster, supra,* 7 *N. J.* 42, 50–51 (1951), nor is a construction of a penal statute that will aid in its evasion to be favored, *State v. Hand,* 71 *N. J. L.* 137, 141 (*Sup. Ct.* 1904). In *Stricker v. Pennsylvania R. R. Co.,* 60 *N. J. L.* 230, 235 (*E. & A.* 1897), it was stated:

"It must be admitted that this is a penal statute, and that, in general, such statutes must be construed strictly, but it is equally well settled that this rule is not violated by adopting the sense of the words which best harmonizes with the object and intent of the legislature, and that the whole context of the statute must be construed together."

Following these principles we shall give to the statute in question its most apparent and reasonable meaning having in mind the legislative purpose, but without extending its provisions by implication or intendment.

 Generally speaking the term "hunting" means the act of searching for, pursuing or chasing game. More specifically, the term as used in the statute requires the concurrence of three factors: (1) physical presence in an area where game is believed to be or may be expected to be found; (2) possession of the necessary equipment with which to capture or kill game; and (3) the intention of capturing or killing game if and when the opportunity presents itself. The facts in the instant case plainly satisfy these three requirements. Admittedly the defendant was in an area where deer might be expected to be found and had in his possession the equipment necessary to kill. But did he intend to kill a deer if and when one presented itself? Certainly such an intention cannot legitimately be inferred from the mere possession of a gun while driving in an area where deer might be found, for these facts are equally susceptible of the inference that he had no such intention but rather was en route to or from an entirely different area. On the other hand, it cannot be said that the mere fact that the defendant was driving his car excludes the presence of an intention to kill a deer if one should present itself, for a person may hunt from a car as well as on foot, see *R. S.* 23:4–16, as

amended, making it illegal to hunt while in an automobile. In the instant case, however, the defendant was not merely driving in an area where deer abound with a gun in his possession, but the gun was loaded with two shells and lay beside him on the front seat of his car. From this added fact it most surely can be inferred that he intended to shoot a deer if and when one presented itself. The validity and reasonableness of this inference is strengthened by the fact that in *R. S.* 23 :4–24.1, for a violation of which the defendant was convicted and from which conviction he took no appeal, it is provided that for the purposes thereof "whenever a person is found with such loaded shotgun or rifle in possession in a vehicle, the same shall be conclusive proof that the person was in the act of pursuing or taking birds or animals," *i. e.*, hunting. In our opinion, therefore, the defendant was engaged in hunting deer at the time of his alleged offense.

For the defendant to be guilty of a violation of *R. S.* 23 :4–44, as amended, it is necessary not only that he be proven to have been engaged in hunting but also that he had an illegal missile "in [his] possession in the woods or fields." While he was driving on a public road was the defendant "in the woods or fields" within the meaning of this statute? We are of the opinion that he was not. Elsewhere in the game laws the Legislature has quite clearly indicated that the words "in the woods or fields" are not intended to extend to and include roads and highways. Thus, in *R. S.* 33 :4–23, as amended, the Legislature has made it an offense under certain conditions for a person to have a deer in his possession "in any conveyance while in the woods or fields or on the roads or highways." Presumably if the Legislature had intended in *R. S.* 23 :4–44, as amended, to forbid the possession of an illegal missile in circumstances such as are here present it would have resorted to the use of similar language.

In concluding this opinion we pause to call attention to a procedural question which was not raised by the parties and on which we therefore do not pass on this appeal: Would

the fact that the defendant pleaded guilty in the municipal court require or justify a dismissal of his appeal? In this regard, see *State v. Webber,* 76 *N. J. L.* 199 (*Sup. Ct.* 1908); *State v. Heyer,* 89 *N. J. L.* 187 (*E. & A.* 1916); *State ex. rel. Borough of South Belmar v. Whittington,* 4 *N. J. Misc.* 590 (*Sup. Ct.* 1926); 2 *Am. Jur., Appeal and Error,* § 230, *p.* 987.

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.