PER CURIAM.
This case was transferred from the Court of Criminal Appeals to this court by the Chief Justice pursuant to law.
I.
The following portion of this opinion was prepared for the court by Mr. Justice Faulkner, to whom the case was assigned.
Warren and Echols appeal from a jury verdict, and judgment of the Circuit Court of Lee County in a trial de novo, for violation of a city ordinance. We affirm.
Echols was tried on charges of drinking intoxicating liquor in a public place; (2) resisting arrest; (3) escape from a police officer; and (4) assault on a law enforcement officer. He was found guilty on all charges by the jury. The jury assessed fines, and the court ordered additional punishment of 6 months hard labor. Sentences ran concurrently.
Warren was charged with aiding and abetting Echols to escape custody of a police officer. The jury found him guilty and assessed a fine. The court added a 6 months sentence of hard labor.
The cases were tried jointly. They filed joint appeals.

The Facts

Police Officer, Martin Van Lampman, testified that on May 25, 1974 he received a call reporting an automobile accident in the vicinity of the Moton Apartments. He was wearing a police uniform and driving a vehicle marked with a police emblem. He drove his automobile down Slaughter Street and pulled into a parking area to the front of the Moton Apartments. This parking lot was identified as an area reserved for the tenants and guests of Building Number 5 of the Moton Apartments. Lampman later testified that Echols was a resident of Mo-ton Apartments, Building 5.
Lampman testified that after he stopped his vehicle in the parking area, he noticed Echols and another individual standing in front of an oak tree. Echols’ location was defined as being a few feet behind the sidewalk and approximately twenty feet in front of Building Number 5 of the Moton Apartments.
Lampman observed Echols tilt a Schlitz beer can to his mouth and then informed Echols that he was under arrest for drinking in public. Echols replied, “No, I’m in my front yard,” and turned from Lampman to walk in the opposite direction. Lamp-man grabbed Echols by his arm and wrestled him to the ground. They struggled on the ground for five or ten minutes and, in the process, Echols struck Lampman about the arms several times. Lampman then lifted Echols from the ground by his handcuffs which were attached to Echols’ right arm, and pulled Echols to the patrol car. As Lampman attempted to push Echols into the back seat of the patrol car, he observed an individual swing the lid of a garbage can at his head. Lampman identified Lorenzo Warren as the individual swinging the garbage can lid at him.
Lampman attempted to call for additional police units and Echols struggled free from his grip. Echols left the scene wearing a pair of handcuffs.
Lampman testified that the Schlitz beer can was knocked to the ground during the altercation and he observed “the contents coming out of it.”
Lampman testified that he recovered a Schlitz beer can, which “he supposed Echols had drunk from,” approximately one half hour after the incident. He testified that the can was empty but that he smelled the odor of beer. The can was not given to the State toxicologist for evaluation.
The evidence of Echols and Warren tended to show that Echols was not holding a beer can in his hand, and he was not drinking beer. They denied swinging a garbage can lid at the officer.

Issues

The principal issues raised in this appeal are: (1) Was the ordinance void because of *1321 vagueness; (2) was the place of the alleged drinking of intoxicating liquor a public place; and (3) was there sufficient evidence to prove a prima facie case.
A.
Section 15-38 of the Auburn Code of Ordinances provides:
“No person shall possess or drink malt, vinous, spiritous, or other intoxicating liquors within the confines or parking area of any stadium, basketball court, or other places in said city in which athletic events are in progress during or near to the playing at a public school or other athletic contests or events; and no person shall drink any such liquors in any other public place, except in places where liquors are sold at retail for consumption on the premises pursuant to a license issued by the Alabama Alcoholic Beverage Control Board.”
Echols maintains that this ordinance is void because of vagueness. He contends the last sentence of the ordinance applies only to places of the same general kind or class as those specifically mentioned. We disagree. The ordinance is not ambiguous. It is clear that the first part of the ordinance refers to places where athletic events are held, and the second part refers to any other public place. Either the first sentence, or the second sentence, could be stricken and the remaining sentence would have a clear meaning; the one does not need the other for interpretation. Consequently, we hold the ordinance not to be void because of vagueness. Whether the ordinance could withstand a constitutional charge of being administered in a discriminating manner has not been raised.
B.
Public Place
Was the alleged place of drinking the beer a public place? We hold that it was. Even though Echols was in the yard of his apartment house, he could be observed from a public street. Persons traveling the street could see him and his beer can. He was in a public place within the meaning of the ordinance. Franklin v. State, 91 Ala. 23, 8 So. 678 (1890); Lee v. State, 136 Ala. 31, 33 So. 894 (1902).
C.
Sufficiency of the Evidence
Echols moved to exclude the evidence when the City rested. The trial judge correctly overruled his motion.
Here, the officer saw Echols tilt a Schlitz beer can to his mouth; he saw the contents pour onto the ground during the fracas between him and Echols, and Echols did not deny that beer was in the can when the officer announced that he was placing him under arrest for drinking in public. Echols said, “No, I’m in my front yard.”
The weakest part of the City’s evidence is that of the empty beer can being retrieved by the officer 30 minutes after the “rumble” between him and about 30 or 40 citizens at the apartment complex. Admittedly, the officer exercised poor judgment in the first instance, but his failure to get the evidence — the beer can — at the scene is questionable. However, the jury could find from evidence other than the beer can that the can contained beer, and Echols was drinking it.
The other charges against Echols grew out of the drinking charge. He does not argue any other charge. We pretermit discussion of them.
II.
The following portion of this opinion was prepared for the court by Mr. Justice Bloodworth.
We hold that the City did sustain the burden of proof in the case against Lorenzo Warren for “aiding an escape.” This was an issue for the jury, which it found, under the evidence, adverse to Warren4 contentions. Following is the relevant testimony of the arresting officer.
*1322 . . Mr. Echols started to walk off, going down this sidewalk. I put a hand on his arm and told him he was under arrest, once again, for drinking in public and to come with me to the police station. At this time he said, ‘No,’ and he swung around with his other arm . . ”

“. . .1 wrestled him down to the ground and I attempted to start putting handcuffs on this individual and I got handcuffs on his right arm . . .”

“And there was at least about ten to fifteen people that were gathered all the way around in this area here and they were starting to close in so I got up, took Mr. Echols by the handcuff that I had on his right arm and by a lock of his hair and brought him to the police car here. I made an attempt to reach the mike that was on the hook and I couldn’t get it inside the car ... I was going to get to the back seat and try to open the back seat and put Mr. Echols into the back seat and by the time I got to the back seat, Mr. Warren . . . took a swing at me with a garbage can lid and I noticed that the individuals had increased to somewhere around twenty-five to thirty in the street and they were completely around the car and around my area and I became extremely fearful at that time so I decided to — it was either me getting to the mike or forgetting about the whole situation and going to the hospital and, especially after the garbage can lid had come flying after me.
“So I decided since I couldn’t reach the mike to go ahead and let Mr. Echols go so I could open the car door and get in to use both hands to open the car door and get in and get ahold of the mike. So I called ‘double zero’ which is the most serious police call. This is the ‘officer in trouble’ call . . . immediately after I put out this call, the individuals starting to move down the street and after I came back out of the car, they began to run down the street and I couldn’t tell where they ran but Mr. Echols left the scene wearing one of my handcuffs . . . ”
[Emphasis supplied.]
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES and BEATTY, JJ., concur in Part I.
JONES and EMBRY, JJ., dissent.
HEFLIN, C. J., and BLOODWORTH, MADDOX, ALMON, SHORES and BEAT-TY, JJ., concur in Part II.
FAULKNER, JONES and EMBRY, JJ., dissent.