STATE of Maine

v.

John B. HILLOCK and George
E. Robertson.

Supreme Judicial Court of Maine.

April 6, 1978.

Frank F. Harding, Dist. Atty., James W. Gallagher, Asst. Dist. Atty., Belfast, for plaintiff.

James E. Mitchell, Augusta (orally), for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, and GODFREY, JJ.

POMEROY, Justice.

These appeals[1] come to us after the appellants had been convicted of "night hunting", 12 M.R.S.A. § 2455. The appeals (1) attack the sufficiency of the indictments; (2) attack the constitutionality, as applied, of 12 M.R.S.A. § 3051.1; and (3) attack the constitutionality of 12 M.R.S.A. § 3051.1 on its face.

In addition, numerous trial errors are alleged.

We deny the appeals.

The facts are not seriously in dispute. They may be summarized as follows:

Sometime in the evening of October 30, 1976, the appellants were seen riding in a truck on the Bog Road in Albion, Maine. Appellant Hillock had recently purchased a wood lot in Unity, Maine which was located in close proximity to where they were seen. At about the time the truck was seen on Bog Road, three game wardens were on Bog Road investigating a report that "night hunters" were in the area.

At that time and place, Warden Ford was wearing the uniform of a warden of the Maine Department of Inland Fisheries and Wildlife. As the appellants' truck approached him, Warden Ford signaled the driver of the truck to stop.

After the truck was stopped, Warden Ford had a conversation with both appellants. One of the appellants testified that Warden Ford told him "that they were checking vehicles and that they were chasing and attempting to arrest night hunters". The appellants explained to the Warden that they were out on Bog Road only to familiarize themselves with the area since Hillock had only recently bought the wood lot in Albion.

At that time, Warden Ford observed a shotgun and a portable spotlight in plain view in the cab of the truck. Warden Ford then told appellants if they "got caught coming out of the field with the equipment in there, that they would be charged with night hunting". Hillock suggested that it would be better if he put the shotgun in a case which he said he had in the truck. Warden Ford agreed that that was the prudent thing to do. With this warning appellants were released and they went upon their way.

Later that night Warden Ford, another warden and a "trainee" were driving on Route 9 in Unity when they observed automobile lights which later turned out to be the lights of the same truck Warden Ford had earlier stopped on Bog Road. At the time he observed the lights, the truck was being driven on a dirt road approaching

---

1. The appeals have been prosecuted with commendable zeal. Several interesting and important questions have been raised. We are assisted in our decision by an excellent brief filed on behalf of the defendants. The points raised on appeal have also been thoroughly argued by their attorney.

Despite the fact that some of the points raised strike at the very heart of the Inland Fisheries and Game Laws, especially as they relate to the enforcement of the game hunting laws, the State saw fit neither to file a brief nor to appear at oral argument in opposition to appellants' position.

We cannot condemn this neglect of obligation too strongly.

Route 9. As he watched the course of the vehicle, he saw it reach the intersection of Route 9 and then proceed in a southerly direction on Route 9. The wardens, who were proceeding northerly, pulled directly in front of the approaching truck, turned on the blue flashing light and stopped the truck. As he approached the truck on foot, Warden Ford recognized the occupants of the truck as the appellants whom he had stopped earlier. He then saw in plain view the shotgun and the spotlight almost exactly where they had been earlier when he stopped the truck in Albion.

Warden Ford immediately placed the appellants under arrest and read them the warning required to be given by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The wardens then searched the truck and found, in addition to the gun and spotlight, a hunting knife and sheath, one small flashlight, ammunition of various descriptions suitable for use in guns and pistols, including five "00" shotgun shells, and two 12-gauge rifle slugs. The wardens took possession of the shotgun, the lights, the shotgun shells, the knife and the sheath.

Although appellant Robertson requested of the Warden that he give a receipt for the items taken, no receipt was given.

Indictment, trial, conviction, entry of judgment and the two appeals to this court followed.

There is no question but that the appellants did all that was required of them to raise and preserve for appellate review the issues now before us.

The indictments alleged that

"on or about the 31st of October 1976 at Unity, County of Waldo and State of Maine, did then and there unlawfully hunt wild animals, other than raccoons, after one half hour after sunset of October 30, 1976 and before one half hour before sunrise of October 31, 1976 to wit: 1:00 A.M."

Appellants remind us that in *State v. Allen*, 151 Me. 486, 489, 121 A.2d 342, 344 (1956), this Court set forth the "elements"

necessary for night hunting, said elements being four in number. We were likewise informed that the catalog of elements found in *"Allen"* was expressly approved in *State v. Vicniere*, 152 Me. 293, 128 A.2d 851 (1957), and was alluded to in *State v. Pike*, Me., 306 A.2d 145 (1973). *See also State v. Pottle*, Me., 384 A.2d 55 (1978).

Noting that the indictments in the case now before us nowhere alleged the existence of these "elements", appellants argue the indictments are fatally defective because of the lack of such allegations.

In *State v. Munsey*, 114 Me. 408, 410, 96 A. 729, 729–30 (1916), this Court said

"It is an elementary rule of criminal pleading that every fact or circumstance which is a necessary ingredient in a prima facie case of guilt must be set out in the complaint or indictment. It has been also frequently declared that in complaints or indictments charging violation of a statutory offense it is sufficient to charge the offense in the language of the statute without further description, providing the language of the statute fully sets out the facts which constitute the offense. Again, it has been held that the complaint or indictment is sufficient if it should state all the elements necessary to constitute the offense either in the words of the statute or in language which is its substantial equivalent."

The statute appellants are charged with having violated reads in part as follows:

"It shall be unlawful to hunt wild animals from ½ hour after sunset until ½ hour before sunrise of the following morning except raccoons, as provided in chapters 301 to 337. For the purpose of this section, the time shall be that which is recognized as legal in the State of Maine. Except that it shall be unlawful to hunt wild animals in the State from sunset to ½ hour before sunrise of the following morning, except raccoons, during the open season on deer hunting with firearms each year." 12 M.R.S.A. § 2455.

The offense charged is one made a crime by statute. We note the indictment substantially tracks the language of the stat-

ute. What is prohibited by the statute is *hunting* wild animals at the time described by statute i. e. "between ½ hour after sunset until ½ hour before sunrise of the following morning."

■ The term "hunting" means the act of searching, pursuing or chasing game. *State v. Meinken*, 10 N.J. 348, 91 A.2d 721 (1952).

■ The four "elements" mentioned in *Allen, Vicniere* and *Pike* are the elements which must be established to demonstrate guilt of night hunting. These are not "elements" in the sense that that term is used, for example, in both the opinion by Mr. Justice Powell and the concurring opinion by Mr. Justice Rehnquist in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). An indictment which charges, in the language of the statute, that one did unlawfully hunt wild animals in legal effect, charges him with searching for, pursuing or chasing wild animals with a "purpose to search, find and possess game".

■ As we said in *State v. Vicniere, supra*, guilt of night hunting is *demonstrated* by evidence, direct or circumstantial, or both, sufficient to prove beyond a reasonable doubt that the respondent was in the area of the offense charged which area is one where deer are known to resort; that the time was nighttime as distinguished from daytime and within the limits set by statute and that there were available certain instrumentalities, that is, a light, a gun and ammunition, and back of this a purpose to search, find and possess the animal (other than raccoons) if opportunity presented itself.[2]

■ By alleging as it did that the respondents did unlawfully *hunt* wild animals other than raccoons ½ hour after sunset until ½ hour before sunrise of the following morning, to wit: 1:00 A.M., the indictment was legally sufficient to charge the offense described in 12 M.R.S.A. § 2455.

■ Appellants next attack 12 M.R.S.A. § 3051[3] as unconstitutional both on its face and as applied.[4]

The appellants argue that the statute was so broad it purports to authorize the "dragnet-type" of stops and searches which was condemned in *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

We do not so interpret the statute.

All that the statute purports to do as to stopping motor vehicles is permit such stopping in those circumstances in which the Supreme Court of the United States in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), indicated that the Fourth Amendment of the Constitution of the United States permitted certain "seizures" of the person on less than probable

---

**2.** In *Vicniere* this Court said

"To prove a purpose to search, find and possess game, the prosecution produced testimony that the respondent drove the car slowly whilst a spotlight from within the automobile was used to illuminate fields and apple trees where deer were known to resort."

**3.** "Vehicles must stop on signal

1. Authority of law enforcement officers. Any officer authorized to enforce the provisions of chapters 301 to 335, if in uniform and if he has reason to believe that a violation of any of such provisions has occurred or is taking place, may at any time stop any motor vehicle, boat, vessel, airplane or conveyance of any kind for the purpose of arresting or questioning the operator or occupant thereof, or for the purpose of searching said motor vehicle, boat, vessel, airplane or conveyance of any kind.

2. Penalty. Any operator of a motor vehicle, boat, vessel, airplane or conveyance of

any kind, who fails or refuses to stop such conveyance immediately upon request or signal of any officer, in uniform, whose duty it is to enforce the inland fish and game laws, shall be punished by a fine of not less than $100 or not more than $400 or by imprisonment for not more than 90 days, or by both."

**4.** Nothing on the face of the statute could conceivably infringe upon Fourth Amendment rights. We see no occasion then to respond to the facial attack made on the statute. *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). Our discussion will only relate to appellants' charge that the statute is unconstitutional as applied. Since, as we will hereafter note, no search other than a search incidental to a lawful arrest was made, there is no occasion to discuss that portion of 12 M.R.S.A. § 3051 which purports by its terms to authorize "searching said motor vehicle, boat, vessel, airplane or conveyance of any kind."

cause. The *Terry* rule has been applied to automobile stops by this Court in *State v. Babcock*, Me., 361 A.2d 911 (1976), and by various Federal Circuit Courts of Appeals of which *United States v. Collins*, 532 F.2d 79 (8th Cir. 1976) is but an example.

In the instant case the evidence establishes conclusively that Warden Ford first observed appellants' automobile being driven on a little used road where deer were known to abound at a time they were actually investigating a complaint of night hunting in the area. At the time appellants were stopped, Warden Ford had knowledge and could have articulated if he had been asked, that the area was one in which a crime was being committed by someone, i. e. night hunting, and that the road was one little used for legitimate purposes after dark. As a result of this perfectly proper investigative stop, he observed the light and the gun *in plain view*. Both the gun and the light were instrumentalities customarily used by night hunters.

That only an investigative stop was made at that time was best evidenced by the fact that after a brief conversation with the appellants, the Warden allowed them to go on their way.

 Some time after midnight that very night in Unity, Maine in an area, the testimony reveals, where deer were known to abound, the same vehicle of which the Warden had made an investigative stop earlier in the evening, was seen being driven from a dead end road which passed through fields where deer were usually plentiful. At that time, knowing as he did that the vehicle contained a gun and a search light, the Warden could and did properly conclude that the crime of night hunting was being committed in his presence.

A warrantless arrest was specifically authorized, in the circumstances, by 17–A M.R.S.A. § 15–B.[5]

The taking of the real evidence from the automobile resulted from a search incident to a proper arrest. In such circumstances a warrantless search is authorized by law. *State v. Babcock, supra.* The statute about which the appellants complain (12 M.R.S.A. § 3051) as we interpret it, authorizes nothing more than *Terry* -type investigatory stops. *State v. Babcock, supra.*

As we interpret this statute, we see no constitutional infirmity in the statute as applied to the facts of this case.

We have examined the other allegations of error which the appellants make and find them to be without merit.

The entry must be:

Appeal denied.

DELAHANTY and NICHOLS, JJ., did not sit.

---

5. We note 12 M.R.S.A. § 3051 purports to authorize a warden in uniform to arrest when the warden "has reason to believe that a violation of any of such provisions has occurred". In the circumstances of this case we see no occasion to discuss whether such provision raises constitutional questions because it might be construed to authorize arrest on less than probable cause, or whether this authorization for arrest has been repealed by the adoption of 17–A M.R.S.A. § 15–B.