ON REHEARING
This Court originally reversed defendant's conviction for possession of marijuana, finding that the evidence introduced at trial was the product of an illegal seizure. We held that Dallas County Sheriff's deputies Wayne Odom and Dale Maddox did not have adequate grounds for an investigatory stop of defendant's vehicle based solely on their testimony of having seen the headlights of a car moving slowly down a dirt road separating two cotton fields at 10:30 p.m. Since the initial stopping of the vehicle was unreasonable, the officers had no authority to seize a manila folder, filled with what appeared to be marijuana, in plain view on the car seat.
 I
On application for rehearing, the Attorney General filed a motion to supplement the record to incorporate a transcript of defendant's preliminary hearing, which was not included in the record on appeal submitted to this Court. That motion is due to be granted because the record clearly shows that the trial judge considered the preliminary hearing transcript in making his determination of probable cause. At trial, defense counsel told the court that he was "willing to submit these motions (to suppress) to you (trial judge) on the transcript already prepared and let you decide on that basis." The trial judge stated that he would "consider the transcript of the testimony taken at the preliminary hearing . . . for purposes of this suppression motion." The transcript was then marked "for identification."
We have granted the application for rehearing and have withdrawn our original opinion because the additional evidence adduced at the preliminary hearing provides "specific and articulable facts" upon which to base a reasonable suspicion that the occupants of defendant's vehicle had committed or were about to commit an offense. See Terry v. Ohio, 392 U.S. 1, 21,88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).
At the preliminary hearing, Deputy Odom testified as follows:
 "A. We had a lot of complaints about night hunting around that area. We didn't know if people were night hunting or what.
"Q. Did you suspect that they might be night hunters?
"A. Exactly what we thought to start with.
"Q. That's exactly what you thought to start with?
"A. Yes."
Odom also testified that the vehicle "was moving awfully slow. I mean it wouldn't even register on the speedometer, it was that slow."
In our judgment, the complaints of night hunting in the area, combined with the deputies' observation of the car moving slowly through the fields with its headlights on, gave rise to more than an "inarticulate hunch" that something was amiss, seeTerry v. Ohio, 392 U.S. at 22, 88 S.Ct. at 1880, and established an "objective basis for suspecting (the defendant) of criminal activity", see United States v. Cortez,449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981), i.e., of hunting at night. See also Langley v. State, 383 So.2d 868, 869
(Ala.Cr.App.), cert. denied, 383 So.2d 873 (Ala. 1980).
At least three Alabama statutes specifically prohibit hunting at night. See Alabama Code Sections 9-11-235; -242; -251 (1975). A violation of any of these sections constitutes a misdemeanor. Section 9-11-252. Hunting any protected game, except deer, at night can result in a fine of $250 to $500 and possible revocation of a hunting license for one year. Alabama Code Sections 9-11-235; -242. The penalty for hunting deer at night is a minimum $500 fine, mandatory revocation of hunting license, and imprisonment for up to ten days in the county jail. Alabama Code Section 9-11-252. *Page 673 
County sheriffs are, by statute, authorized to enforce the game and fish laws, specifically those provisions proscribing night hunting, and to seize any vehicle or hunting equipment used in such illegal activity. Alabama Code Section 9-11-252.1
(b) (1975). In addition, statutory authority for the type of investigatory detention approved in Terry v. Ohio, supra, is found in Section 15-5-30, Code of Alabama 1975.
 "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, . . . may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."
Although the defendant's vehicle was in an open cotton field on private property three or four hundred yards from the highway, its headlights and its movement (the very things which, in connection with the night hunting complaints, made it suspicious) were clearly visible from the public roadway from which it was sighted by the deputies. Under these circumstances, the vehicle was in a public place within the meaning of Section 15-5-30. Compare Warren v. City of Auburn,337 So.2d 1319 (Ala. 1976) (the defendant drinking beer in yard of his apartment house was in a "public place", for purposes of public intoxication ordinance, because he and his beer can could be observed from a public street); Lee v. State, 136 Ala. 31,33 So. 894 (1903) (dice players forty yards from highway were in a "public place", within the meaning of gaming statute, because their activities were visible to persons traveling the highway); and Henderson v. State, 59 Ala. 89 (1877) (gamblers in bushes on edge of field forty yards from road were in a "public place" because they were in view of a path used by schoolchildren); with Smith v. State, 23 Ala. 39 (1853) (hollow located 100-115 yards from main road and not visible from highway was not a "public place"); Taylor v. State, 22 Ala. 15
(1853) (field surrounded by forest one mile from highway not a "public place" because not visible from public roadway); andBythwood v. State, 20 Ala. 47 (1852) (hollow in the woods 400 yards from highway and out of sight not a "public place").
There can be no serious question that a misdemeanor such as a game and fish law violation is a "public offense" within the meaning of Section 15-5-30. Section 1-1-5, Code of Alabama 1975, defined a "public offense" as "an act or omission forbidden by law and punishable as provided in this Code." Although that section was repealed by the new Criminal Code, 1977 Ala. Acts 812, No. 607, Section 9901 (January 1, 1980), misdemeanors have routinely been classified as "public offenses" in Alabama and other jurisdictions. See Starnes v.State, 30 Ala. App. 156, 2 So.2d 333 (1941); People v. Tuck,142 Cal.Rptr. 362, 75 Cal.App.3d 639, 644 (1977); Smith v.Hubbard, 253 Minn. 215, 91 N.W.2d 756, 761 (1958).
In addition, although the question has not been addressed in Alabama, other jurisdictions have applied the same Fourth Amendment standards generally applicable to automobile searches to searches of vehicles involved in suspected game law violations. See United States v. Stricklin, 534 F.2d 1386 (10th Cir.), cert. denied, 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95
(1976); State v. Pearce, 318 So.2d 455 (Fla.Dist.Ct.App. 1975);State v. Brumley, 95 Idaho 919, 523 P.2d 522 (1974); State v.Hillock, 384 A.2d 437 (Me. 1978); Daugherty v. State,40 Md. App. 535, 392 A.2d 1165 (Ct.Spec.App. 1978); State v.Dickenson, 43 Or. App. 1023, 607 P.2d 754 (Ct.App. 1979); Statev. Odam, 40 Or. App. 551, 595 P.2d 1277 (Ct.App. 1979), affirmed, 290 Or. 160, 619 P.2d 647 (1980); Gonzalez v. State,588 S.W.2d 355 (Tex.Cr.App. 1979).
In United States v. Stricklin, supra, a game and fish officer patrolling a thinly-populated ranch and recreation area at night saw a light on the horizon and later observed automobile headlights illuminating roadside areas. The Tenth Circuit Court of Appeals approved the detention of the vehicle on suspicion of night hunting *Page 674 
and upheld the subsequent search which uncovered marijuana.
In State v. Hillock, supra, a game warden observed the defendant's vehicle being driven on a little-used road at night in an area where deer were known to abound at a time when officers had heard complaints of night hunting in the area. The Supreme Court of Maine upheld the stop of the vehicle based on a Terry v. Ohio type state statute and observed the following:
 "At the time appellants were stopped, Warden Ford had knowledge and could have articulated if he had been asked, that the area was one in which a crime was being committed by someone, i.e. night-hunting, and that the road was one little used for legitimate purposes after dark. As a result of this perfectly proper investigative stop, he observed the light and the gun in plain view." 384 A.2d at 441. (Emphasis in original).
In our judgment, therefore, the deputies here had "specific and articulable facts", Terry v. Ohio, supra, upon which to base their suspicions of night hunting. The vehicle stop was justified and the subsequent finding of marijuana was incident to the plain-view exception to the warrant requirement. SeeDaniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).
 II
The defendant contends that the court erred by denying her motion to produce a sample of the marijuana for independent testing and analysis.
However, the record reveals that the court ordered a sample of the material "to be delivered to a testing facility of defendant's choice", and directed her attorney to provide the court with the name of a laboratory. The court stated for the record that the defendant's attorney had not been denied inspection of the evidence but was "free to look at it any time . . . wherever it was."
The record only supports a finding that the defendant did not avail herself of the opportunity to have the material tested. She cannot now be heard to complain that her rights have been violated. See Etheridge v. State, 414 So.2d 157 (Ala.Cr.App. 1982).
 III
The rule against joinder of felonies and misdemeanors in the same count of an indictment does not apply to an indictment under Section 20-2-70, Code of Alabama 1975, since the charged felony includes a misdemeanor by operation of law. Coleman v.State, 344 So.2d 1249, 1250 (Ala.Cr.App. 1977).
 IV
The defendant argues that the failure of any prospective juror to respond to the following voir dire question requires that the whole venire should have been stricken: "Would any of you acquit the defendant if the state failed to prove her guilty beyond a reasonable doubt?"
The trial court denied the defendant's motion to strike the venire, but immediately inquired of the prospective jurors:
 "Do any of you have any doubt or any reservation that in serving as a juror that you would be able to follow the instructions that the Court would give you as to the law and the law as it applies in this case? Is there anyone of you that think you might have any problem with that whatsoever?
"(No response)."
The court's charge on the State's burden of proof, the presumption of defendant's innocence, and the standard of reasonable doubt was detailed and comprehensive, and the defendant took no exception to it. Under these circumstances, overruling the motion to strike the venire was not harmful to defendant. A.R.A.P. 45.
 V
At a bench conference prior to the introduction of evidence found in the defendant's vehicle, the court cautioned the State to refrain from mentioning "(t)he bottle containing unknown crystal substance, *Page 675 
the white powder, this white powder substance, white residue and a green suede coat and a clear bottle containing a blue crystal substance." The court stated that "(n)one of those things would have anything to do with the charge in this case." Thereupon, the State elicited the following testimony from Deputy Wayne Odom:
 "Q. Deputy Odom, what did you find in the trunk, please, sir?
 "A. Several items were found. Some marijuana and scales. Plastic bags. A small piece of paper with handwritten weights and grams and ounces wrote on it."
. . . .
"Q. And where was that metal can found, please, sir?
 "A. Between Mr. Wilson's legs on the passenger side of the vehicle."
. . . .
 "Q. And what is contained inside that can, please, sir, that fruit cake can?
 "A. There's a razor blade, a straight razor blade, some rolling papers."
Counsel for defendant objected and moved for a mistrial on the grounds that the foregoing testimony introduced evidence of separate crimes, and was in violation of the trial court's admonition not to elicit evidence pertaining to other drug charges. The trial court denied the motion for mistrial, but instructed the jury to exclude the testimony from its consideration and polled each juror individually to determine whether he could disregard it.
In our judgment, the testimony was admissible on the issue of possession of marijuana even though it may have pointed to other drug offenses. See Brantley v. State, 294 Ala. 344,317 So.2d 345 (1975); Durden v. State, 394 So.2d 967 (Ala.Cr.App. 1980), cert. quashed, 394 So.2d 977 (Ala. 1981). Moreover, any error was cured by the action of the trial court.
 VI
The defendant insists that her motion for new trial should have been granted because the record does not show that her given written charges were taken to the jury room.
Section 12-16-13, Code of Alabama 1975, requires that "(c)harges which are marked `given' by the trial judge must be taken by the jury with them on retirement. . . ." (Emphasis added).[1] Here, the record reveals that immediately before the jury retired, the trial judge stated the following: "Okay, ladies and gentlemen, if you take these verdict forms and the exhibits the bailiff will carry you back to the jury room and you can begin your deliberations."
Citing Pruett v. State, 408 So.2d 202 (Ala.Cr.App. 1981), andDalrymple v. State, 405 So.2d 725 (Ala.Cr.App.), cert. denied,405 So.2d 728 (Ala. 1981), for the proposition that a reversal is required when the record shows the given charges did not go to the jury room, the defendant claims that the record is "completely devoid of any evidence or indication that the jury took with them Defendant's requested jury charges."
In Pruett, the court told the jury to take the "verdict forms" with them and denied a request by the defendant to send the given charges to the jury room. In Dalrymple, the "exhibits" were the sole items on record as having accompanied the jury as they left for their deliberations, and we observed that "(i)t is undisputed that these charges were not with the jury during their deliberations." 405 So.2d at 726. In bothPruett and Dalrymple, it was undisputed that the jury did not have the given charges in the jury room.
In contrast, the following exchange occurred during the hearing on defendant's motion for a new trial:
 "MR. KOMINOS (Defense Counsel): Judge, during the course of the trial the defendant submitted certain written jury charges to the Court, with a front cover, which I'll ask the court reporter to mark as an exhibit. *Page 676 
 "(Whereupon Defendant's Exhibit No. 1 was marked for identification by the reporter.)
 "MR. KOMINOS: Along with certain written requested charges. And those charges were not submitted to the jury to take back with them in the jury room during their deliberation. And on the authority of section 12-16-13 of the Alabama Code, we feel that it is error and move for a new trial.
 "THE COURT: Why do you say they didn't go back to the jury room?
 "MR. KOMINOS: Judge, I was here and I saw all the exhibits going back there, and everything — the exhibits went back there but the jury charges did not go back to the jury room. And I represent that as an officer of this court.
 "THE COURT: Well, of course — anything the State wants to say in reply?"
. . . .
 "MR. SULLIVAN (Assistant District Attorney): Judge, I was also here and everything I remember is that the jury charges were put in a white envelope and taken back in the back. And I believe the burden is on the defendant in this matter to meet that burden to show that the charges were not taken back there. And I don't believe he's met that burden at all.
 "THE COURT: Anything else either one of you want to say?
"MR. KOMINOS: No, sir.
"MR. SULLIVAN: No, sir.
 "THE COURT: Well, I want you to know that these charges did go back to the jury room. I don't know of any case where the given charges did not go back. And of course you say you're an officer of the court and if you saw that and if you knew it and felt that that was true, I'm sort of curious why you didn't feel you had some responsibility to raise the question at the time you saw it. . . ."
As the foregoing excerpt demonstrates, this case is distinguishable from Pruett and Dalrymple because the assistant district attorney stated that the charges had been sent along with the jury and the trial judge concurred in that finding. Moreover, defense counsel's contention that he realized the omission but did nothing to bring it to the court's attention, prevents him from gaining the relief he now seeks. As this court stated in Hill v. State, 57 Ala. App. 437, 329 So.2d 126, cert. denied, 295 Ala. 406, 329 So.2d 132 (1976):
 "With knowledge at the time of trial of the facts forming a basis for an objection . . . it constitutes a specie of estoppel for one to forego an objection and proceed with the trial in the hope . . . of a verdict in his favor." 57 Ala. App. at 440, 329 So.2d at 128.
The judgment of the trial court is due to be affirmed.
ORIGINAL OPINION WITHDRAWN; APPLICATION FOR REHEARING GRANTED; JUDGMENT AFFIRMED.
All Judges concur.
[1] This case was tried before July 16, 1982, the effective date of Temporary Rule 14, Alabama Rules of Criminal Procedure, which superseded this provision of Section 12-16-13. *Page 1014