923 A.2d 217

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. D.A., DEFENDANT–APPELLANT.

Argued January 16, 2007—Decided June 4, 2007.

*Amira Rahman Scurato,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public

Defender, attorney; *Ms. Scurato* and *Steven M. Gilson,* Designated Counsel, on the briefs).

*Daniel I. Bornstein,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney).

Justice LONG delivered the opinion of the Court.

This case centers on the meaning of the language in the witness tampering statute, *N.J.S.A.* 2C:28-5(a), that criminalizes a defendant's knowing attempts to silence a witness while "believing that an official proceeding or investigation is pending or about to be instituted." In particular, we are asked whether a threat by a defendant against a person who has observed him in a crime, with the purpose to forestall official action, will satisfy the above-cited language.

On a motion for a judgment of acquittal, the trial judge answered that question in the affirmative. Thereafter, defendant was convicted of tampering and the Appellate Division affirmed. We now reverse. Because there can be no tampering, within the meaning of *N.J.S.A.* 2C:28-5(a), unless the defendant acted, believing that an official proceeding or investigation was pending or about to be instituted, and because there was no evidence that this defendant held such a belief, his conviction cannot stand.

I.

Defendant, D.A., was charged by an Atlantic County Grand Jury with five separate offenses: (1) second-degree sexual assault, *N.J.S.A.* 2C:14-2(c); (2) fourth-degree criminal sexual contact, *N.J.S.A.* 2C:14-3(b); (3) third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24-4(a); (4) fourth-degree child abuse, *N.J.S.A.* 9:6-3; and (5) third-degree witness tampering, *N.J.S.A.* 2C:28-5(a). At trial, defendant moved for a judgment of acquittal on the tampering charge on the ground that his conduct did not violate the statute because, at the time he acted, he did not believe "an official proceeding was about to be instituted."

The basic facts surrounding the tampering charge are not in dispute. Defendant lived with his family in the same motel as his victim, Tracie,[1] who was thirteen years old. Tracie's closest friend, Jessica, often stayed over at Tracie's and observed defendant's regular sexual advances toward Tracie, including multiple instances of French-kissing.

One day, when defendant and Jessica were in Tracie's room alone, defendant told Jessica that "if she [said] anything to anybody, [he would] take full custody of Tracie and [Jessica would] never see her again." Jessica understood defendant to be making a threat to keep her silent, but did not believe he could carry it out. Also, at the time of the threat, there was no evidence to indicate to defendant that Jessica had any intention of reporting what she saw to the authorities. She did, however, tell her mother about defendant's conduct when she returned home. Defendant's threat to Jessica is the focal point of this appeal.

The trial judge denied defendant's motion for judgment of acquittal on the tampering charge. The judge dismissed the child abuse count, and a jury found defendant guilty of the four remaining charges. After appropriate mergers, defendant was sentenced to a custodial term of five years for witness tampering and to a consecutive term of nine years with four and one-half years of parole ineligibility on the second-degree sexual assault count.

Defendant appealed, challenging among other things, denial of the motion to dismiss the tampering count. The Appellate Division rejected that claim, concluding "[i]t is no less an offense to seek to prevent a witness from conveying to authorities information that would trigger an investigation than to seek to prevent that witness from communicating with authorities who have received information from other sources that would justify the commencement of an investigation."

---

[1] In order to protect privacy concerns, the minors involved in this case are referred to by pseudonyms.

We granted certification solely on the tampering issue, 188 *N.J.* 220, 902 *A.*2d 1237 (2006).

## II.

Defendant argues that from the evidence presented, the jury could not conclude that he "believ[ed] that an official proceeding or investigation [was] pending or about to be instituted" when he threatened Jessica; that without such a conclusion, the statutory elements could not be satisfied; and that even if ambiguous, the doctrine of lenity requires that the statute be read in his favor.

The State counters that the tampering statute clearly encompasses defendant's conduct; that to hold otherwise would allow defendant's actions to go unpunished; and that the doctrine of lenity cannot be permitted to thwart the obvious intent underlying a law.

## III.

On a motion for judgment of acquittal, the governing test is: whether the evidence viewed in its entirety, and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged. *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967). *See R.* 3:18–1; *see also Jackson v. Virginia,* 443 *U.S.* 307, 318–19, 99 *S.Ct.* 2781, 2788, 61 *L.Ed.*2d 560, 573 (1979) (explaining that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction … [is] whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). The propriety of the denial of the motion for judgment of acquittal in this case depends on the meaning to be ascribed to the tampering statute.

## IV.

In interpreting a statute, the overriding goal is to give effect to the Legislature's intent. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A*.2d 1039 (2005). "[T]he best indicator of that intent is the statutory language," thus it is the first place to look. *Ibid.* (citation omitted). If the plain language leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources. *Ibid.* (citations omitted).

We only turn to extrinsic evidence in limited circumstances, such as when "there is ambiguity in the statutory language that leads to more than one plausible interpretation." *Ibid.* In addition, we "may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *Ibid.*

An added canon is that penal statutes are to be strictly construed. *State v. Valentin*, 105 *N.J.* 14, 17, 519 *A*.2d 322 (1987) (citations omitted). The strict construction doctrine, and its corollary, the doctrine of lenity, "means that words are given their ordinary meaning and that any reasonable doubt ... is decided in favor of anyone subjected to a criminal statute." 3 *Sutherland Statutory Construction* § 59.3 (6th ed.2001); *see also State v. Alexander*, 136 *N.J.* 563, 573, 643 *A*.2d 996 (1994) (noting that ambiguity in criminal statute "cannot inure to the benefit of the State").

Simply because a statute can be interpreted in more than one way does not automatically implicate the strict construction doctrine. For example, it "does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed or prevent a court from giving effect to the terms of the statute in accordance with their fair and natural acceptation." *State v. Meinken*, 10 *N.J.* 348, 352, 91 *A*.2d 721 (1952). A court may look to extrinsic evidence to clarify an ambiguity and divine legislative intent in the context of a penal statute. *See Valentin, supra*, 105 *N.J.* at 19, 519 *A*.2d 322 (looking beyond plain language

to find legislative intent in context of *N.J.S.A.* 2C:29–3(b)(4)); *see also State v. Sein,* 124 *N.J.* 209, 214–18, 590 *A.*2d 665 (1991) (investigating legislative history and Code commentaries to determine whether snatching purse constitutes robbery under *N.J.S.A.* 2C:15–1(a)(1)).

Only if that search is fruitless, and the ambiguity remains, does the strict construction doctrine apply. *See Sutherland, Statutory Construction,* § 59.3 ("But the possibility of articulating a narrower construction does not by itself make the rule of lenity applicable. In essence, the rule of lenity should only be applied if after reviewing all sources of legislative intent the statute still remains ambiguous."). Those are the legal principles that inform our analysis.

## V.

In 1978, the Legislature enacted the new Code of Criminal Justice based on the Final Report of the Criminal Law Revision Commission. Senate Judiciary Committee, *Statement to Senate Bill No. 738,* at 1 (May 15, 1978). That revision was intended to replace the "hopelessly antiquated" statutes previously found in Title 2A, defining crimes and disorderly persons offenses. New Jersey Criminal Law Revision Commission, *The Final Report; Volume I: Report and Penal Code,* § 738, at vi (1971). To guarantee that law enforcement resources would be used as effectively as possible, the Code sought to introduce precision into the statutory descriptions of offenses so that "persons appropriately subject to a criminal sanction will not escape because of a poorly defined crime." *Id.* at vii-viii. It was against that backdrop that *N.J.S.A.* 2C:28–5 was incorporated into the Code.

In its present form,[2] *N.J.S.A.* 2C:28–5 provides that:

---

[2] The statute has only undergone minor changes. In 1981, subsection (a) was amended to make the offense "a crime of the *second degree* if the actor employs force." *L.* 1981, *c.* 290, § 27 (emphasis added). The provision was again

Tampering with witnesses and informants; retaliation against them

a. Tampering. A person commits an offense if, *believing that an official proceeding or investigation is pending or about to be instituted,* he knowingly attempts to induce or otherwise cause a witness or informant to:

(1) Testify or inform falsely;

(2) Withhold any testimony, information, document or thing;

(3) Elude legal process summoning him to testify or supply evidence; or

(4) Absent himself from any proceeding or investigation to which he has been legally summoned.

The offense is a crime of the second degree if the actor employs force or threat of force. Otherwise it is a crime of the third degree. Privileged communications may not be used as evidence in any prosecution for violations of paragraph (2), (3) or (4).

b. Retaliation against witness or informant. A person commits a crime of the fourth degree if he harms another by an unlawful act with purpose to retaliate for or on account of the service of another as a witness or informant.

c. Witness or informant taking bribe. A person commits a crime of the third degree if he solicits, accepts or agrees to accept any benefit in consideration of his doing any of the things specified in subsection a.(1) through (4) of this section. [*N.J.S.A.* 2C:28–5 (emphasis added).]

Facially, the statute contemplates a situation in which a defendant believes that some sort of official action has occurred or is contemplated. That is the bone of contention between the parties.[3] The State argues that every defendant who commits a crime and attempts to silence a witness does so because he believes that an official proceeding could otherwise be brought against him, and thus that action is sufficient to satisfy the statute.

Defendant counters that the evil the statute addresses is quite different—intentional interference with an official action that defendant believes is ongoing or is about to occur. According to defendant, the tampering statute does not criminalize mere avoidance of a possible future action by securing a person's silence.

---

amended in 1991 to add the "threat of force" as a second-degree trigger. *L.* 1991, *c.* 33, § 1.

[3] Defendant also argues that he did not act "knowingly" because he was not "practically certain" that a proceeding was pending or about to be instituted. However, "knowingly" modifies the attempt and not the belief, thus rendering that argument unavailing.

Both readings of the statute are plausible. Indeed, the Act prohibits causing an "informant" to withhold "information," words that align with the State's view. Also interdicted are causing a "witness" to "testify" falsely, to withhold "testimony," to evade "legal process," and to absent oneself from a "proceeding" to which he or she has been "summoned"—words that together support defendant's view that the real focus of the Act is interference with what defendant believes is an already existing or soon-to-be existing official action. We therefore look beyond the words of the Act for insight into its meaning.

First, we note its placement in the Code. *N.J.S.A.* 2C:28–5 is included under Chapter 28, which is titled "Perjury and other Falsification in *Official* Matters." (emphasis added). The kinds of offenses with which it is grouped also shed light insofar as they are of a piece. They include, among others, Perjury, *N.J.S.A.* 2C:28–1, False Swearing, *N.J.S.A.* 2C:28–2, and Unsworn Falsification to Authorities, *N.J.S.A.* 2C:28–3. The unifying element of those crimes is the wrongful interference with ongoing proceedings of the justice system.

Because *N.J.S.A.* 2C:28–5 was modeled after section 241.6 of the Model Penal Code (MPC) (Tampering with Witnesses and Informants; Retaliation Against Them), we look, as well, to the commentary to that MPC section, which declares that it was included to "deter conduct that affects the integrity of the criminal justice system." *Model Penal Code and Commentaries: Part II*, § 241.6 (1980). The MPC further provides that the tampering offense targets "attempts" to induce a "witness" or "informant" to subvert the administration of justice but only if the defendant acts "believing that an official proceeding or investigation is pending or about to be instituted." *Ibid.* That requirement is entwined with the ultimate harm of obstructing justice, yet is phrased in such a way as to eliminate the need for a proceeding or investigation actually to be pending or contemplated by the authorities. Thus,

the statute focuses on the individual actor's culpability and not on external factors that may be irrelevant to the actor's aim of subverting the administration of justice.... The prosecution must establish that the defendant held the specified

belief but need not prove that a proceeding or investigation was in fact pending or about to be instituted. In assessing such belief, the word "about" as it appears in this subsection should be construed more in the sense of probability than of temporal relation.

[*Ibid.*]

Defendant argues that the requirement that he "hold a specified belief" that a proceeding or investigation was in fact pending or about to be instituted is dispositive of the meaning of the statute and points to the Model Charge on *N.J.S.A.* 2C:28–5 as supportive of that view:

[T]he defendant must have believed that an official proceeding or investigation was pending or about to be instituted. This requires that the defendant considered to be true the fact that an official proceeding or investigation was pending; in other words, that the defendant, in (his/her) mind, believed that an official proceeding or investigation was pending.

[*Model Jury Charges (Criminal)*, § 2C:28–5 Tampering with Witnesses [and Informants] (1982).]

The State counters that the "probability" language in the commentary undergirds its position and that any other interpretation would allow witness interference to occur with impunity.

In fact, the hindering statute, *N.J.S.A.* 2C:29–3, operates to proscribe the exact conduct at issue here. As initially enacted, that statute only prohibited hindering the apprehension, investigation, prosecution, or conviction of another. In 1981, subsection (b) was added providing in relevant part that:

b. A person commits an offense if, with purpose to hinder *his own* detention, apprehension, investigation, prosecution, conviction or punishment for an offense or violation of Title 39 of the New Jersey Statutes or a violation of chapter 33A of Title 17 of the Revised Statutes, he:

(1) Suppresses, by way of concealment or destruction, any evidence of the crime or tampers with a document or other source of information, regardless of its admissibility in evidence, which might aid in his discovery or apprehension or in the lodging of a charge against him; or

(2) Prevents or obstructs by means of *force or intimidation* anyone from performing an act which might aid in his discovery or apprehension or in the lodging of a charge against him; or

(3) Prevents or obstructs by means of force, *intimidation or deception any witness or informant* from providing testimony or information, regardless of its admissibility, which might aid in his discovery or apprehension or in the lodging of a charge against him; or

(4) Gives false information to a law enforcement officer or a civil State investigator assigned to the Office of the Insurance Fraud Prosecutor established by section 32 of P.L. 1998, c. 21.

The offense is a crime of the third degree if the conduct which the actor knows has been charged or is liable to be charged against him would constitute a crime of the second degree or greater. The offense is a crime of the fourth degree if such conduct would constitute a crime of the third degree. Otherwise it is a disorderly persons offense.

[L. 1981, c. 290, § 29 (codified at *N.J.S.A.* 2C:29-3(b)) (emphasis added).]

Although *N.J.S.A.* 2C:29-3 was broadly modeled after MPC § 242.3 (Hindering Apprehension or Prosecution), the MPC does not proscribe a defendant's attempts to hinder his or her own apprehension or prosecution but remains limited to third-party hindering. Thus, under the MPC, tampering is the only statute interdicting attempts to secure a witness's silence. That is not so in New Jersey. When the Legislature amended *N.J.S.A.* 2C:29-3 in 1981 to prohibit an individual from hindering his own apprehension, it created a specific law governing that conduct. Indeed, the press release issued at the bill's passage explains that the amendment "[e]stablishes a *new* crime for any person who attempts to hinder his own apprehension, prosecution or conviction by concealing evidence, intimidating witnesses, or by giving false information to a police officer." *Press Release,* Acting Governor Joseph P. Merlino, Senate Bill No. 1537 (Sept. 24, 1981) (emphasis added).

Thus, though both the tampering statute, *N.J.S.A.* 2C:28-5, and the hindering statute, *N.J.S.A.* 2C:29-3, broadly proscribe the suppression of evidence, there is a fundamental difference between them. *N.J.S.A.* 2C:29-3 prohibits such suppression at any point prior to a defendant forming a belief that an official action has been or is about to be instituted. Unlike *N.J.S.A.* 2C:28-5, *N.J.S.A.* 2C:29-3 is phrased in terms of avoiding discovery, apprehension, or the lodging of a charge. For that reason, it is also associated in the Code with escape, eluding, resisting, flight, and physical interference, all of which constitute efforts by a defendant to stay out of the official cross-hairs of law enforcement, without necessarily believing that official action exists or is contemplated. On the contrary, *N.J.S.A.* 2C:28-5 addresses action taken *after*

one is already the *focus* of, or *believes he may be the focus* of, an official proceeding.

That distinction is important. The conduct that hindering addresses is the wrongful avoidance of an official action by attempting to prevent a witness from reporting a crime to the police; the conduct that is the focus of tampering is the wrongful interference with an official action that defendant believes has begun or is about to begin.

The grading of those offenses reflects that tampering is considered a greater societal threat than hindering. Indeed, all tampering offenses are at least third-degree offenses unless committed with force, in which case they are second-degree offenses. *N.J.S.A.* 2C:28–5. Hindering ranges from a disorderly persons offense to a third-degree offense, depending on the degree of the offense the defendant seeks to avoid. *N.J.S.A.* 2C:29–3. That grading reveals that a higher level of culpability attaches to interference with what defendant believes are the already grinding wheels of the criminal justice system than to a defendant's effort to avoid becoming a target of law enforcement in the first instance. In sum, we read the requirement in *N.J.S.A.* 2C:28–5(a) to mean exactly what it says: that the proscribed offense is committed only when a defendant acts believing an official proceeding has been or is about to be instituted. How that requirement will play out in an individual case will depend upon the facts. Because belief is a state of mind, it will not, as a regular matter be subject to direct proof. *Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 254, 773 *A.*2d 1121 (2001). Although there could be a case in which a defendant actually expresses his belief in the pendency of official action at the time of a tampering offense, it seems to us that such a scenario would be unusual. Therefore, the proofs in a tampering case will ordinarily be circumstantial. What will be necessary to establish the requisite state of mind is evidence that defendant was aware of facts that would lead a reasonable person to believe that an official action was pending or about to be instituted. For example, if a defendant in a tampering case has

been arrested or has been served with a complaint or an indictment, he will satisfy the requirement of a belief that an official proceeding is pending because a reasonable person would hold that belief based on the facts. The same is true if a defendant encourages a witness, who he knows has been called to testify, to do so falsely, *N.J.S.A.* 2C:28–5(a)(1), or if he causes that witness to elude the legal process of which he is aware, *N.J.S.A.* 2C:28–5(a)(3), or absents himself from a proceeding or investigation to which he has been summoned, *N.J.S.A.* 2C:28–5(a)(4).

On the other end of the spectrum are cases in which the defendant threatens a person at the very scene of his own misconduct to avoid official involvement altogether. That conduct violates the hindering statute. *N.J.S.A.* 2C:29–3. The State's contrary interpretation-that any effort to silence a witness, at any time, is tampering-writes out of the statute the critical language (believing that an official proceeding or investigation is pending) and obliterates the legislatively-mandated distinction between tampering and hindering.

## VI.

We turn now to the present case. It is undisputed that defendant threatened Jessica after she observed his criminal act. Defendant told Jessica that, if she reported to anyone what she had seen he would take custody of Tracie, and Jessica would never see her again. That conduct by defendant plainly violated the provisions of the hindering statute insofar as it constituted intimidation of Jessica to keep her from reporting him. *N.J.S.A.* 2C:29–3(b)(3). However, it did not violate the tampering statute-the crime with which defendant was charged and of which he was convicted-because there was no evidence adduced before the jury to suggest that defendant was aware of any facts that would lead him to believe that an official proceeding was pending or about to be instituted. Therefore defendant's conviction for tampering must be reversed and the sentence imposed on that count must be vacated.

## VII.

The judgment of the Appellate Division is reversed, and the matter remanded to the Law Division for appropriate amendment of the judgment of conviction.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.