239 N.J. Super. 65 (1990)
570 A.2d 1019
STATE OF NEW JERSEY IN THE INTEREST OF L.E.W., A JUVENILE.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1989.
Decided February 28, 1990.
*67 Before Judges O'BRIEN, HAVEY and STERN.
Robert C. Thelander, attorney for appellant.
Herbert H. Tate, Jr., Essex County Prosecutor, attorney for respondent (John S. Redden, Deputy First Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant L.E.W., a 17 year old, appeals from an adjudication of juvenile delinquency under N.J.S.A. 2A:4A-23b, in that she committed the petty disorderly persons offense of defiant trespass (N.J.S.A. 2C:18-3b(1)). We affirm but remand for a hearing to determine the contents of a statement signed by the complaining witness, Hobie Heymann.
Ms. Heymann and her brother operate a "7-11" franchise at 280 South Livingston Avenue in Livingston. For some time prior to October 6, 1988, the day of L.E.W.'s arrest, they had *68 been having difficulty with L.E.W., and had told her on numerous occasions she was not permitted to come upon the premises. The issue in this case is whether "the premises" includes the parking lot.
At one point, Ms. Heymann had called the police, and signed a document that apparently granted the police permission to act on her property concerning L.E.W. Ms. Heymann testified she "really didn't read" this document, and that it had been signed "a few days" before October 6, 1988, yet characterized this time as a long time prior to that date.
On October 6, 1988, at 9:44 p.m., Officer Peter Glassman observed L.E.W. in the parking lot of the "7-11" store. For approximately ten minutes he observed her getting in and out of a Cadillac automobile. Ms. Heymann first observed L.E.W. on that date in the parking lot with the police officer. When she went outside, she responded affirmatively when the officer asked her if L.E.W. was the complained of juvenile. The officer had been instructed by his superiors that if L.E.W. was on the "7-11" property he was to remove and possibly arrest her. L.E.W. was subsequently arrested, taken to police headquarters, and charged with juvenile delinquency for having committed defiant trespass.
According to the officer, L.E.W. was hanging out in the parking lot talking with her boyfriend. He said he had driven into the parking lot and observed her actions for approximately ten minutes. He did this because he had been told by his superior that the operator of the "7-11" store "... did not wish to have [L.E.W.] on her property." When the officer approached L.E.W. and asked what she was doing, she responded, "nothing." When told she was not allowed "on the property," L.E.W. responded that Ms. Heymann had "told [her] not to be in the store." The officer told L.E.W. that includes all the property.
Testifying on her own behalf, L.E.W. conceded she had been told by Ms. Heymann a few months before October 6, 1988 that *69 she did not want her in her store. According to L.E.W., she had had oral surgery on the day of her arrest and was in pain. When her boyfriend picked her up they went to the "7-11" to buy cigarettes and Anbesol. She claimed they first pulled into an adjoining parking lot for the bank, and she observed the police car driven by Officer Glassman pull up behind her boyfriend's car. She said she waved because she was acquainted with the auxiliary officer, Mike Prendergast, who was in the police car.[1] L.E.W. then asked her boyfriend to go "get the stuff they wanted so they could leave," and he pulled into the "7-11" lot and parked.
At that point, L.E.W. claimed Officer Glassman came over and instructed her to get out of the vehicle and placed her under arrest, stating that "your feet are now on the property." He directed her to put on her shoes and come with him. According to L.E.W., Ms. Heymann drove up in her car as L.E.W. was being arrested and went into the store.
The trial judge found the testimony of Ms. Heymann credible, believable and sincere. He found the version of the event by L.E.W. and her boyfriend unbelievable. Conversely, he found the police officer to be credible. Thus he concluded that the State had borne its burden of proof and sustained the complaint. Since we conclude these findings could reasonably have been reached on sufficient credible evidence present in the record, we are bound by them. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
On this appeal, defendant raises the following arguments:
POINT I THE TRIAL COURT'S RULING THAT THE AFFIRMATIVE DEFENSE OF BEING IN A PUBLIC PLACE EMBODIED IN N.J.S. 2C:18-3c(2) DOES NOT APPLY TO A PERSON CHARGED WITH A VIOLATION OF N.J.S. 2C:18-3b(1) WAS ERRONEOUS AND THEREFORE THE JUVENILE'S ADJUDICATION OF DELINQUENCY MUST BE REVERSED.
POINT II THE JUVENILE IS ENTITLED TO A NEW TRIAL BECAUSE OF THE STATE'S FAILURE AND THE TRIAL COURT'S REFUSAL TO ORDER *70 THE STATE TO SUPPLY DEFENSE COUNSEL WITH A STATEMENT SIGNED BY THE STATE'S CHIEF WITNESS, HOBIE HEYMANN.
POINT III THE JUVENILE'S ADJUDICATION OF DELINQUENCY MUST BE REVERSED AS THE JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE (NOT RAISED BELOW).
N.J.S.A. 2C:18-3 reads in pertinent part as follows:
a. Unlicensed entry of structures. A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any structure, or separately secured or occupied portion thereof. An offense under this subsection is a crime of the fourth degree if it is committed in a dwelling. Otherwise it is a disorderly persons offense.
b. Defiant trespasser. A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
(1) Actual communication to the actor; or
* * * * * * * *
(3) * * *
c. Defenses. It is an affirmative defense to prosecution under this section that:
* * * * * * * *
(2) The structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure....
L.E.W. contends that the affirmative defense set forth in N.J.S.A. 2C:18-3c(2) was available to her in this case. The trial judge disagreed and so do we.
N.J.S.A. 2C:18-3 prohibits two different types of trespass. Subsection a. is captioned "Unlicensed entry of structures." The offense has two primary elements. First, it requires that an individual knowingly enter or remain without license. The second essential element of the offense requires that the "entry or remaining" occur in a "structure." "Structure" is specifically defined in N.J.S.A. 2C:18-1 as:
[A]ny building, room, ship, vessel, car, vehicle or airplane, and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present.
Therefore, the type of premises entered is critical because unless a "structure" is involved there can be no offense. However, once a structure is involved, the State is only required *71 to prove that defendant made an unlicensed entry or surreptitiously remained in any structure and knew he was not licensed or privileged to do so, and nothing more.
The second type of trespass is found in subsection b., which differs from that prohibited in subsection a., in at least two significant respects. First, the type of premises involved is of no importance since this subsection prohibits unlicensed entry "in any place." Second, unlike under subsection a., the State must prove more than mere unlicensed entry. Additionally, the State must prove that the defendant was either directly advised against trespass, or should have been aware that trespass was prohibited, by the presence of posted signs or fences near the prohibited area. The affirmative defenses set forth in subsection c. apply, by their language, only to unlicensed entry into "a structure."
When the Code of Criminal Justice was initially enacted by L. 1978, c. 95, N.J.S.A. 2C:18-3 was enacted in the same language as contained in the Final Report of the New Jersey Criminal Law Revision Commission, dated October 1971. Paragraph a. of N.J.S.A. 2C:18-3 referred to "any building or occupied structure" rather than simply "any structure." The defiant trespasser offense in subparagraph b. refers to "any place." However, subparagraph c., dealing with defenses, originally read as follows:
c. Defenses. It is an affirmative defense to prosecution under this section that:
(1) a building or occupied structure involved in any offense under subsection a. was abandoned;
(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or
(3) the actor reasonably believed that the owner of the premises or other person empowered to license access thereto, would have licensed him to enter or remain.
N.J.S.A. 2C:18-3 was amended by chapter 112 of the Laws of 1980. The caption in subparagraph a. "Buildings and occupied structures" was amended to "Unlicensed entry of structures." *72 In the body of that subsection, the words "building or occupied" were deleted before the word "structure." Subsection b. was unchanged, but subsection c. was amended to read as follows:

Defenses. It is an affirmative defense to prosecution under this section that:
(1) A structure involved in an offense under subsection a. was abandoned;
(2) The structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure; or
(3) The actor reasonably believed that the owner of the structure or other person empowered to license access thereto, would have licensed him to enter or remain.
Thus, by the 1980 amendment, the pertinent provisions of subsection c. were specifically changed by the Legislature from "the premises" to "structure." The term "occupied structure" was originally defined in the same language as in the Final Report. The amendments by c. 112 § 1 of the Laws of 1980, amended N.J.S.A. 2C:18-1 to define the word "structure" to mean "any building, room, ship, vessel, car, vehicle, or airplane and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." The word "premises" as contained in the original enactment was not defined. The committee statement attached to Senate Bill No. 884, which was enacted as chapter 112 of the Laws of 1980, reads as follows:
The purpose of Senate Bill No. 884 is to clarify that the unlawful entry for unlawful purposes of any room or building, or form of conveyance, as well as the unlawful entry for unlawful purposes of any place adapted for overnight accommodation or carrying on business, constitutes a burglary. This clarification is accomplished by the broadening of the definition of the term `structure' as used in Chapter 18 of the Penal Code which covers burglary and criminal trespass.
Assembly Judiciary, Law, Public Safety and Defense Committee amendments modify the affirmative defense to burglary and the degrees of the crime, in order to make prosecutions less complicated.
Thus, no specific explanation is given why the word "premises" in subsection c, Defenses, was replaced with the word "structure." In estates and property law, the word "premises" includes the land and buildings thereon or the area of land surrounding a house and actually or by legal construction *73 forming one enclosure with it. Black's Law Dictionary, (5th ed. 1983). Had the statute not been amended to change the word "premises" to "structure" in the defense section c, defendant would be correct. However, the Legislature amended that section and clearly made the defense applicable only to unlicensed entry of a "structure" and not the more general term "premises."
We are mindful that in his comments to N.J.S.A. 2C:18-3 in the New Jersey Criminal Code of Justice, published by Gann Law Books, John M. Cannel states:
Unfortunately, not only was `structure' appropriately substituted for `building or occupied structure' in subsections a and c(1), but also for `premises' in c(2) and c(3). The affirmative defense, however, has been applied as if `structure' in that provision were as broad as `premises.' In State v. Gerstmann, 198 N.J. Super. 175, 178 [486 A.2d 912] (App.Div. 1985), it was applied to a shopping mall parking lot.
We disagree. In Gerstmann, we dismissed the State's appeal on the ground that prosecution of the appeal was barred by the double jeopardy interdiction of the Fifth Amendment to the Federal Constitution. There, defendants had been convicted in the municipal court of the petty disorderly offense of defiant trespass when they continued to place campaign leaflets under windshield wipers of cars parked in a shopping mall after having been told to stop. On appeal, the Law Division judge found defendant not guilty, applying the principles of State v. Schmid, 84 N.J. 535, 423 A.2d 615 (1980), in which the Supreme Court concluded that the existence of a state constitutional right to engage in specific expressional activity on specific private property depends on the extent to which the property has been devoted to public use. Id. at 562, 423 A.2d 615. This is ultimately a fact question, requiring an evaluation of such circumstances as:
(1.) the nature, purposes, and primary use of such private property, generally, its `normal use,'
(2.) the extent and nature of the public's invitation to use that property, and
(3.) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. [Id. at 563, 423 A.2d 615.]
*74 The Schmid case was decided on state constitutional rights of freedom of speech and assembly. Id. at 560-561, 423 A.2d 615. Mr. Schmid had been charged as a disorderly person under N.J.S.A. 2A:170-31, yet the court did not specifically deal with the question of property open to members of the public.[2]
It is true that in Gerstmann we said, in explaining the defense asserted to the charges made, that
[T]hey asserted that Art. 1, par. 6 of the New Jersey Constitution (1947) protected their expressional conduct because of the nature, scope and extent of the public's invitation to use the mall property. See State v. Schmid, 84 N.J. 535 [423 A.2d 615] (1980). In effect, this claim of constitutional right to engage in expressional activities on private property constituted an affirmative defense to the charge pursuant to N.J.S.A. 2C:18-3c(2). [198 N.J. Super. at 178.]
In a footnote we quoted N.J.S.A. 2C:18-3c(2). Based upon this, Mr. Cannel concluded that we had applied the affirmative defense as if the word "structure" were as broad as the word "premises." However, as indicated, our decision was based not upon that ground, but rather upon the presence of double jeopardy. We concluded that the State had no right to appeal from the acquittal by the Law Division. The comments referred to were dicta simply explaining defendant's position.
A parking lot is not a structure. We are bound by the language used by the Legislature when it is clear, unambiguous and unequivocal, as it is in this case. Furthermore, we see logic in the determination by the Legislature to limit the defense to "structures." Using that language the State is only obliged to show that the defendant knew that she was not licensed or privileged to enter the structure and it logically follows that, if at the time the structure was open to members of the public and the actor complied with all conditions imposed on access to or remaining in the structure, she would not have committed the offense. On the other hand, with respect to the charge of a defiant trespasser entering or remaining in "any place," the State is obliged to show that such person had notice *75 against trespass in various ways, such as actual communication as in this case. Thus, in the face of actual notice, the public nature of the premises makes no difference unless the defendant's constitutional rights are in some way impaired, as in State v. Schmid.
L.E.W. does not assert the violation of any of her constitutional rights as was asserted in State v. Schmid, supra, and State v. Gerstmann, supra. See also Brown v. Davis, 203 N.J. Super. 41, 495 A.2d 900 (Ch.Div. 1984), aff'd 212 N.J. Super. 61, 513 A.2d 974 (App.Div.), certif. den. 107 N.J. 53, 526 A.2d 140 (1986); Bellemead Development Corp. v. Schneider, 196 N.J. Super. 571, 483 A.2d 830 (App.Div. 1984). For a discussion of the affirmative defense in terms of constitutional right to expressive activity, see Radich v. Goody, 886 F.2d 1391 (3rd Cir.1989). (In that case, the defiant trespasser statute in Pennsylvania contains the word "premises" in the affirmative defense.)
In reaching our decision, we have not considered the abridgement of any constitutional rights in the enforcement of the defiant trespasser statute or whether such an issue would involve a "defense." We express only the view that the statutory language of the affirmative defense is limited to trespass involving a "structure" and not a parking lot.
We agree with L.E.W. that the trial judge erred in refusing her application to be provided with a copy of the document signed by Ms. Heymann sometime before the offense charged in this case. Although the State argues that it was not obliged to provide a copy of this document as part of discovery under R. 3:13-3(a)(8), see also R. 5:5-1, because it was never in the "possession or control" of the prosecuting attorney, the State recognizes its obligation to provide exculpatory information to a defendant if it is in the possession of the police. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); State v. Carter, 91 N.J. 86, 449 A.2d 1280 *76 (1982); State v. Colasurdo, 214 N.J. Super. 185, 518 A.2d 768 (App.Div. 1986). However, the State argues that the record does not establish the exculpatory nature of the statement and suggests that L.E.W. is merely speculating as to its exculpatory nature and concludes the statement is not material.
The State's position begs the question. The defense is left to speculate because the judge failed to require the State to produce the document for inspection so he and counsel would be aware of its contents and could determine its relevance and materiality. It may be, as the State suggests, irrelevant and immaterial. However, it may be, as defendant suggests, highly relevant and material and even exculpatory, if the area of the premises L.E.W. was given notice not to enter was only the store, as she argues, and not the store and parking lot as the State argues. Furthermore, L.E.W. had the right to cross-examine Heymann on the content of her statement.
We find no merit to defendant's contention that the adjudication of delinquency was against the weight of the evidence. However, we observe that R. 2:10-1 is not applicable to render the juvenile's argument not cognizable, as the State argues, because that rule applies to a jury verdict. Here, we review a nonjury case and are bound by the factual findings of the trial judge when they are supported by adequate, substantial credible evidence and not so wide of the mark as to be clearly mistaken. Rova Farms Resort v. Investors Insurance Co., 65 N.J. 474, 483-484, 323 A.2d 495 (1974), and State v. Johnson, supra.
The judgment is affirmed, but remanded to the trial judge for a determination of the relevance and materiality of the document signed by Ms. Heymann and/or her brother. The State is ordered to produce any documents signed by Ms. Heymann or her brother for the police on this subject for review by the judge and counsel. If, after oral argument, the trial judge decides the documents are indeed relevant and material to the issues involved in this case, an order shall be entered granting *77 L.E.W. a new trial. If, on the other hand, it is determined that the document is irrelevant and immaterial, the judgment of conviction is affirmed with the juvenile retaining her right to appeal from the determination that the document is irrelevant. We do not retain jurisdiction.
NOTES
[1] Prendergast was not called as a witness.
[2] It involved the campus of Princeton University.