SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Marc A. Olivero (A-83-13) (073364)**

**Argued January 6, 2015 -- Decided June 29, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a locked, fenced-in parking lot used for storage by an adjacent manufacturing facility constitutes a "structure" for the criminal offense of burglary under N.J.S.A. 2C:18-2.

Defendant was arrested at a locked, fenced-in parking lot used for storage by an adjoining warehouse operated by Domino Manufacturing. The warehouse is enclosed by a fence with a locked gate. Domino Manufacturing uses the lot to store equipment for printing presses, including metal shafts and printing rollers which are kept outside because they are too heavy to be moved inside the warehouse. Defendant was attempting to exit the main gate in a pick-up truck in which the police found bolt cutters, the padlock from the gate, and eleven metal printing rollers. Defendant was charged with third-degree burglary under N.J.S.A. 2C:18-2, and disorderly persons possession of a burglary tool under N.J.S.A. 2C:5-5. Defendant was tried only on the burglary charge; the charge under the disorderly persons statute was dismissed.

At the close of the State's evidence at trial, defendant moved for acquittal on the ground that the State failed to meet its burden of proving that the premises that defendant entered was a "structure" as defined in N.J.S.A. 2C:18-1, contending that defendant entered a parking lot, which is not a "structure" within the statute. The trial court denied the motion, finding that the fenced-in area was a prohibited space not open to the public, as well as a place adapted for the conduct of Domino Manufacturing's business, and therefore it constituted a "structure." Defendant was convicted of third-degree burglary, and sentenced to imprisonment for a term of five years.

On appeal, defendant challenged his conviction, contending that the evidence failed to establish that he entered a "structure" under the burglary statute. In an unpublished per curiam opinion, the Appellate Division affirmed defendant's conviction and sentence.

The Court granted defendant's petition for certification. 217 N.J. 304 (2014).

**HELD**: A fenced-in and locked lot is a "structure" within the meaning of N.J.S.A. 2C:18-2 when the lot is secured from the public and is used for business purposes. Here, when defendant entered the lot to remove metal rollers, he entered a "place … adapted for carrying on business," as a "structure" is defined under the statute. Defendant's conviction for third-degree burglary is affirmed.

1. The meaning of "structure" within the burglary statute, N.J.S.A. 2C:18-2, is an issue of statutory construction and therefore an interpretation of the law that can be decided by this Court without deference to the trial court's determination. In determining statutory intent, courts must look first to the plain language of the statute, which is generally the best indicator of intent. Where the language of a statute clearly reveals its meaning, the sole function of the court is to enforce the statute in accordance with its terms. If the plain language of a statute is not clear, or if it is susceptible to more than one meaning, the Court may look to extrinsic evidence such as legislative history or the entire legislative scheme containing the statute to determine legislative intent. (pp. 7-9)

2. The burglary statute, N.J.S.A. 2C:18-2, is a penal statute which must therefore be strictly construed. In construing a penal statute, a court may still look to extrinsic evidence to clarify an ambiguity and determine legislative intent. The strict construction doctrine and its corollary, the doctrine of lenity, mean that words are given their ordinary meaning and that any reasonable doubt is decided in favor of defendant. The rule of lenity is not invoked simply because there are competing judicial interpretations of statutory language, but is applied only if a

statute is ambiguous and that ambiguity is not resolved by a review of all sources of legislative intent.  (p. 9)

3.  The burglary statute (N.J.S.A. 2C:18-2(a)(1)) provides in pertinent part that:  "[a] person is guilty of burglary if, with purpose to commit an offense therein or thereon he … enters a research facility, structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter."   The statute (at N.J.S.A. 2C:18-1) defines "structure" as:  "any building, room, ship, vessel, car, vehicle or airplane, and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present."  (pp. 9-10)

4.  The burglary statute demonstrates an expansion of the list of locations that can constitute structures.  The broad definition of  "structure" employed in the statute is evidenced by the language and the grammatical structure of N.J.S.A. 2C:18-1.   It is also confirmed by the legislative history and evolution of the statute.  At common law, the offense of burglary existed only upon entry into a dwelling.  That was expanded in an early statute which included a broad range of locations in addition to dwellings.  The statute was then narrowed by amendment in 1978 to reflect the common law origin of burglary through language that referenced entry into an *occupied* structure.  The 1980 amendments, found in the current version of the statute, removed the word "occupied," and broadened the definition of "structure" to reference "*any* place adapted … for carrying on business therein."   The statement accompanying the 1980 amendments confirms that this language designates an additional category of location protected by the burglary statute.  (pp. 10-13)

5.  Under that portion of N.J.S.A. 2C:18-1 which references "any place adapted … for carrying on business," a storage lot can be a "structure" when it is specifically used for conducting commercial activity and is secured from the public.   In this case, the Court finds that the fenced-in and locked lot constitutes a "structure" within the scope of the burglary statute because use of the lot for storage of equipment and material furthers Domino Manufacturing's business operations, and the company adapted the parking lot for the purpose of storage by fencing and securing it to prevent public access.  (pp. 13-17)

The judgment of the Appellate Division is **AFFIRMED.**

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

MARC A. OLIVERO,

    Defendant-Appellant.


        Argued January 6, 2015 – Decided June 29, 2015

        On certification to the Superior Court,
        Appellate Division.

        Michael J. Confusione, Designated Counsel,
        argued the cause for appellant (Joseph E.
        Krakora, Public Defender, attorney).

        Andrew R. Burroughs, Special Deputy Attorney
        General/Assistant Prosecutor, argued the
        cause for respondent (Carolyn A. Murray,
        Acting Essex County Prosecutor, attorney).

        Jeffrey P. Mongiello, Deputy Attorney
        General, argued the cause for Attorney
        General of New Jersey (John J. Hoffman,
        Attorney General, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    "A person is guilty of burglary if, with purpose to commit an offense therein or thereon he . . . enters a structure." N.J.S.A. 2C:18-2. This case turns on whether a locked, fenced-in parking lot used for storage by the adjacent manufacturing facility constitutes a "structure," as defined by N.J.S.A.

1

2C:18-1, that is, whether it is a "place adapted . . . for carrying on business."

Defendant Marc A. Olivero was convicted of third-degree burglary. On appeal, he argued that a reasonable jury could not find that he entered a "structure" as defined by N.J.S.A. 2C:18-1. The Appellate Division affirmed defendant's conviction and sentence. The panel found that the lot was a "structure" because it was surrounded by a fence and secured to restrict public access. The panel also found that, because the lot was enclosed to protect items that could not be stored within Domino Manufacturing's warehouse, it was a "place adapted . . . for carrying on [Domino Manufacturing's] business."

For the reasons set forth in this opinion, we affirm the judgment of the Appellate Division. We hold that a fenced-in parking lot is a "structure" within the meaning of N.J.S.A. 2C:18-2 when the lot is secured from the public and is used for business purposes.

I.

Domino Manufacturing operates a warehouse located in Newark. The five-story warehouse is enclosed by a fence with a locked gate. In order to access the property, an individual must drive down a road that leads to the gate. Once inside the gate, a gravel road leads to a lot behind the building which is also the location of the company's loading dock. Domino

2

Manufacturing uses that lot to store metal shafts and printing rollers used in printing presses. The rollers are kept outside because they are too heavy to be moved inside the warehouse, but they are stored within the locked, fenced-in lot.

On December 18, 2010, at about 5:00 a.m., a security guard employed by Domino Manufacturing called the police after noticing that the chain and padlock that secured the rear-lot fence had been cut. The police arrived minutes later and found two individuals, later identified as defendant, Marc A. Olivero, and his brother, Gary Olivero, attempting to exit the main gate in a pickup truck. The police officers inspected the truck finding bolt cutters, the padlock from the gate, and eleven metal printing rollers. Domino Manufacturing's security guard testified at trial that the metal rollers found in the back of the pickup truck were the metal rollers that had been kept on the business's premises.

Defendant and his brother were charged with third-degree burglary, contrary to N.J.S.A. 2C:18-2, and disorderly persons possession of a burglary tool, contrary to N.J.S.A. 2C:5-5. They were tried together on the burglary charge.

At the close of the State's evidence, defense counsel moved for acquittal on the ground that the State failed to meet its burden of proving that the premises defendant entered was a structure. Specifically, defense counsel argued that the

3

testimony established that defendant entered a parking lot, which is not a structure as defined by N.J.S.A. 2C:18-1. The trial court denied the motion, noting that the fenced-in area was a prohibited space not open to the public, as well as a place adapted for carrying on Domino Manufacturing's business. A jury convicted defendant of third-degree burglary. The State dismissed the disorderly persons charge. The court sentenced defendant to five years' imprisonment.

Before the Appellate Division, defendant argued that the trial court erred in denying his motion for acquittal because a reasonable jury could not have found that defendant had entered any part of a "structure" as defined by N.J.S.A. 2C:18-1. Defendant contended that the evidence presented at trial only showed that he entered a fenced-in yard and possessed property that Domino Manufacturing kept outside its warehouse.

In an unpublished per curiam opinion, an Appellate Division panel rejected defendant's arguments and affirmed his conviction and sentence. The panel found that the lot was a "structure" within the meaning of N.J.S.A. 2C:18-1 because it was secured from the public. The court also likened the area from which the stolen property was taken to the area referred to in the common law as the "curtilage" of the warehouse building.

4

This Court granted defendant's petition for certification. 217 N.J. 304 (2014). We also granted the motion of the Attorney General to appear as amicus curiae.

II.

Defendant argues that the Appellate Division misinterpreted the term "structure" within the meaning of the burglary statute.[1] Defendant asserts that a parking lot is not a "structure" as defined in N.J.S.A. 2C:18-1 and that the owner's purpose to exclude others from entering the parking lot does not transform it into a "structure." Defendant further contends that, even if such an interpretation were possible, its application would violate the principle that ambiguous penal statutes must be construed against the State. Defendant asserts the Appellate Division's definition of "structure" exceeds the statute's plain language because N.J.S.A. 2C:18-1 does not mention the "curtilage" of the structure. Defendant adds that, even if the statute did encompass "curtilage," the term "curtilage" typically describes "an enclosed area encompassing

---

[1] This Court granted certification to address the single issue stated above, which was the sole question presented in defendant's petition and the only issue analyzed therein. Olivero, supra, 217 N.J. at 304. Defendant attempts via footnote to incorporate by reference all of the issues advanced in support of his appeal to the Appellate Division. It is not appropriate for a party to inject other issues into its petition in this manner. Nonetheless, the Court has reviewed defendant's arguments with respect to the remaining issues and finds them meritless.

the grounds and building surrounding a home, not a commercial manufacturing facility."

Defendant also asserts that the Appellate Division's interpretation of "structure" conflicts with State ex. rel. L.E.W., 239 N.J. Super. 65, 74 (App. Div.), certif. denied, 122 N.J. 144 (1990), in which the panel held that the parking lot of a 7-11 store was not a "structure" for the purposes of a trespass charge. Defendant argues that the parking lot in this case is similarly outside the definition of "structure."

Defendant also contends that Domino Manufacturing did not "adapt" the parking lot as a place for "carrying on business therein." According to defendant, Domino Manufacturing is a paper mill company, not a storage company. Thus, defendant argues, Domino Manufacturing had only "adapted" the actual warehouse on the property, not the fenced-in lot.

The State counters that a plain reading of N.J.S.A. 2C:18-2 reveals the Legislature's intent to "expand the crime of burglary to include the felonious entry of a structure as well as its adjacent curtilage or area that is occupied and closed to the general public at the time of the offense." In addition, the State argues that this matter is distinguishable from L.E.W. First, the State notes that N.J.S.A. 2C:18-2 was never at issue in L.E.W., nor addressed by the L.E.W. court. Second, the State observes that the would-be "structure" in that case was a

6

convenience store parking lot that was typically open to the public.  Id. at 68.  Here, however, defendant entered, in the early morning hours, an enclosed area protected by a security guard, secured by a locked padlock, and surrounded by a fence.

The Attorney General, supports the State's position.  The Attorney General argues that the New Jersey Legislature expanded the burglary statute in 1980 and that legislative intent can therefore be furthered only by a broad reading of the burglary statute and its definition of "structure."  The Attorney General contends that using the lot for storage is consistent with the purposes of the business.  This is particularly true because Domino Manufacturing stores outside only those items that cannot be kept inside the warehouse.

The Attorney General concedes that an area that is open to the public is not considered a "structure" under N.J.S.A. 2C:18-1.  Likewise, the Attorney General acknowledges that a place is only adapted for business purposes if the business exercises dominion over the area beyond the natural state.  For instance, where two people have conducted a transaction but did not intend to adapt the specific area for a business purpose, a burglary cannot occur.

### III.

The meaning of "structure" within the burglary statute is an issue of statutory construction; our review is therefore de

7

novo. Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014). It is well settled that the goal of statutory interpretation is to ascertain and effectuate the Legislature's intent. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) (citing Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011)). Courts should first look to the plain language of the statute, "which is typically the best indicator of intent." In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 467 (2013). Statutory language is to be interpreted "in a common sense manner to accomplish the legislative purpose." N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 236 (1996). When that language "'clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms.'" McCann v. Clerk of Jersey City, 167 N.J. 311, 320 (2001) (quoting SASCO 1997 NJ, LLC v. Zudkewich, 166 N.J. 564, 586 (2001)).

However, "[i]f the plain language of a statute is not clear or if it is susceptible to more than one plausible meaning," the Court may look to extrinsic evidence such as legislative history to determine legislative intent. Marino v. Marino, 200 N.J. 315, 329 (2009). In discerning legislative intent, the Court may consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987).

8

The burglary statute is penal; it must therefore be strictly construed. State v. D.A., 191 N.J. 158, 164 (2007). "The strict construction doctrine, and its corollary, the doctrine of lenity, mean[] that words are given their ordinary meaning and that any reasonable doubt . . . is decided in favor of [the defendant]." Ibid. (quotation omitted). The rule of lenity, however, is not invoked simply because there are competing judicial interpretations of the statutory language. "It does not invariably follow, that every time someone can create an argument about the meaning of a penal sanction, the statute is impermissibly vague, or that the lowest penalty arguably applicable must be imposed." State v. Regis, 208 N.J. 439, 452 (2011). Instead, the rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of "all sources of legislative intent." State v. D.A., 191 N.J. 158, 165 (2007) (quotation omitted). A court may look to extrinsic evidence to clarify an ambiguity and divine legislative intent in the context of a penal statute." Ibid.

IV.

The burglary statute provides that

> [a] person is guilty of burglary if, with purpose to commit an offense therein or thereon he . . . enters a research facility, structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter.

9

[N.J.S.A. 2C:18-2(a)(1).]

N.J.S.A. 2C:18-1 defines "structure" as

> any building, room, ship, vessel, car, vehicle
> or airplane, and also means any place adapted
> for overnight accommodation of persons, or for
> carrying on business therein, whether or not
> a person is actually present.

The fenced-in area at issue in this case does not qualify as a "building, room, ship, vessel, car, vehicle or airplane." Thus, we focus our attention on whether the subject location is a "place adapted . . . for carrying on business therein."

### A.

As a threshold matter, we note that the phrase "place adapted . . . for carrying on business therein" expands, rather than modifies, the list of locations that can constitute "structures" as defined by N.J.S.A. 2C:18-1. The punctuation and structure of the burglary statute indicate as much -- the presence of a comma after "airplane" when none is present after "vehicle," together with the repetition of "means," indicates addition rather than modification.

That grammatical signal finds support in the legislative history of the burglary statute. At common law, burglary applied only to dwellings. See, e.g., State v. Hauptmann, 115 N.J.L. 412, 424 (E & A 1935) ("In 1 Russ. Crimes *785, burglary is defined as 'a breaking and entering the mansion house of

10

another in the night, with intent to commit some felony within the same, whether such felonious intent be executed or not.'"), cert. denied, 296 U.S. 649, 56 S.Ct. 310, 80 L.Ed. 461 (1935). In its earlier iteration as N.J.S.A. 2A:94-1, the burglary statute criminalized "breaking and entering" as follows: "Any person who willfully or maliciously breaks and enters, or enters without breaking, any building, structure, room, ship, vessel, car, vehicle or airplane, with intent to kill, kidnap, rob, steal, commit rape, mayhem or battery, is guilty of a high misdemeanor." (Emphasis added). The statute thus applied to a broad range of locations, not merely to places in which people lived.

In 1978, the Legislature narrowed the statute to more closely reflect burglary's common law origins. The Legislature determined that the

> expansion of the crime of burglary has led to serious problems. Since every burglary is by hypothesis an attempt to commit some other crime, and since even the lower degrees of burglary are often punishable more severely than the crime which the actor was preparing to commit, the great expansion of burglary has introduced serious anomalies in prosecution and punishment. . . .
> The needed reform [in the Criminal Code] takes the direction of narrowing the offense to something like the distinctive situation for which it was originally devised: invasion of premises under circumstances specially likely to terrorize occupants.
>
> [State v. Schenck, 186 N.J. Super. 236, 238

11

(Law Div. 1982) (quoting II <u>Final Report of the New Jersey Criminal Law Revision Commission</u>, "The New Jersey Penal Code," at 209-10 (Oct. 1971)).]

The Legislature therefore amended the burglary statute to resemble the Model Penal Code's narrower version of that offense.  <u>See</u> Cannel, <u>New Jersey Criminal Code Annotated</u>, comment 1 on <u>N.J.S.A.</u> 2C:18-2, at 485 (2014-15) (noting that burglary statute was derived from MPC 221.0).

The 1978 version of the statute provided:  "A person is guilty of burglary if, with purpose to commit an offense therein he:  (1) Enters a building or <u>occupied</u> structure, or a separately secured or occupied portion thereof, unless the premises are at the time open to the public or the actor is licensed or privileged to enter."  <u>N.J.S.A.</u> 2C:18-2 (1978) (emphasis added); <u>see</u> <u>State v. Velez</u>, 176 <u>N.J. Super.</u> 136, 139 (App. Div. 1980), <u>certif. denied</u>, 85 <u>N.J.</u> 504 (1981).  The array of locations to which the burglary statute would apply did not differ dramatically from the predicate statute:  The 1978 statute defined "occupied structure" as "any structure, vehicle, boat, airplane or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present."  <u>N.J.S.A.</u> 2C:18-1; <u>see</u> <u>Velez</u>, <u>supra</u>, 176 <u>N.J. Super.</u> at 139.

In 1980, the Legislature again amended the burglary statute, this time to broaden the definition of the term "structure." Assembly, Judiciary, Law, Public Safety and Defense Committee, Statement to Senate Bill No. 884, at 1 (June 5, 1980). Specifically, the 1980 amendments removed the word "occupied" as the modifier for the word "structure." Ibid. The revision also added the words "also means any" before the language related to "place adapted for . . . ." N.J.S.A. 2C:18-1 (as amended by L. 1980, c. 112).

In enacting the current version of the burglary statute, the Legislature explained that "[t]he primary purpose of the bill is to make clear that the unlawful entry of any building, room, ship, vessel, car, vehicle or airplane, or any place adapted for overnight accommodation or for carrying on business, is a burglary." Statement to Senate Bill No. 884, at 2-3 (Jan. 24, 1980). Thus, the phrases "any place adapted for overnight accommodation" and "any place adapted . . . for carrying on business therein" do not modify other terms in the statute. Instead, they constitute additional categories of locations protected by the burglary statute.

### B.

The question remains whether a privately secured, fenced-in lot used to store a business's property is a "place adapted . . . for carrying on business" for purposes of the

13

burglary statute.  We find that the burglary statute can encompass such lots under certain circumstances.

Black's Law Dictionary defines "place of business" as "[a] location at which one carries on a business," which suggests that "place" is in no way limited by physical characteristics. Black's Law Dictionary 1666 (9th ed. 2009).  "Business" is "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain."  Id. at 226.  "Adapt" means "[t]o adjust to a specified use or situation."  Webster's II, New Riverside University Dictionary 77 (1999).  To adapt a lot to serve as a storage lot, for example, the lot would have to be secured from the public. We therefore find that a storage lot can be a "structure" for purposes of the burglary statute as a place adapted for business when it is specifically used for conducting commercial activity and is secured from the public.

Other case law informs our decision.  In L.E.W., supra, a juvenile was "hanging out" in the parking lot of a 7-11 with her boyfriend, but the store owner did not wish to have her on the property.  239 N.J. Super. at 68.  The juvenile was subsequently arrested and charged with defiant trespass.  Ibid.  The defiant trespass statute contains an affirmative defense that a person cannot be guilty of defiant trespass if "[t]he structure was at the time open to members of the public."  N.J.S.A. 2C:18-

14

3(c)(2). The statute also incorporates the definition of "structure" provided in N.J.S.A. 2C:18-1. L.E.W., supra, 239 N.J. Super. at 70. The juvenile attempted to invoke this affirmative defense; however, the panel concluded that "[a] parking lot is not a structure," thus depriving her of the defense. Id. at 74.

This matter, however, is distinguishable. L.E.W. involved a parking lot that was open to the public. Ibid. That lot was available so that invitees could park their cars in order to shop at the convenience store. Ibid. The lot behind Domino Manufacturing's warehouse, by contrast, is never open to the public. Rather, it is fully fenced-in and protected by both a padlock and a security guard.

In Commonwealth v. Hagan, 654 A.2d 541, 543 (Pa. 1995), the Supreme Court of Pennsylvania found that a fenced-in storage lot was an "occupied structure" under its burglary and criminal trespass statutes. The Pennsylvania statute defines burglary as follows: "A person commits the offense of burglary if, with the intent to commit a crime therein, the person: (1) enters a building or occupied structure, or separately secured or occupied portion thereof . . . ." 18 Pa. Cons. Stat. § 3502. The statute then defines "occupied structure" to include "[a]ny structure, vehicle or place adapted for overnight accommodation

15

of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa. Cons. Stat. § 3501.

In Hagan, supra, the defendant entered a storage lot "enclosed by a chain link fence and secured at the gate by a lock and chain." 654 A.2d at 543. The site was previously utilized as a manufacturing facility; however, it was no longer in active use. Ibid. The lot contained two vacant and inactive buildings. Ibid. The Pennsylvania Supreme Court held that "a fenced and secured storage lot [wa]s a 'place adapted for carrying on business,'" noting that "storage is a business activity no less than any other facet of a business such as manufacturing, retail sales, or distribution." Id. at 544.

Similarly, in State v. Hill, 449 N.W.2d 626, 626-28 (Iowa 1989) (the Iowa Supreme Court), upheld the defendant's burglary conviction for attempting to steal used pistons from a fenced-in enclosure behind an automobile parts store. The Hill court interpreted a burglary statute that defined "occupied structure" to include "[a]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." Iowa Code § 702.12.

16

The facts of this case are more similar to those addressed by the highest courts of Pennsylvania and Iowa than to the facts of the L.E.W. case.  Here, Domino Manufacturing's use of the lot furthers its business:  Domino Manufacturing utilizes its secured lot for storing items too heavy or too large to be stored in the warehouse.  Although storage is not the focus of Domino Manufacturing's paper mill business, the storage of equipment and material is a corollary of that business and is, therefore, part of Domino Manufacturing's "commercial enterprise."  Furthermore, unlike in L.E.W., Domino Manufacturing adapted the parking lot for the purpose of storage by fencing the lot and securing it to prevent public access.

Thus, when defendant entered the lot to remove metal rollers, he entered a "place . . . adapted for carrying on business," N.J.S.A. 2C:18-1, "with purpose to commit an offense therein," N.J.S.A. 2C:18-2, in contravention of the burglary statute.  Because we find that Domino Manufacturing's fenced-in and locked lot itself constitutes a "structure" within the meaning of the burglary statute, we do not reach the argument that the lot is part of the "curtilage" of the warehouse.

V.

For the reasons set forth above, the judgment of the Appellate Division is affirmed.

17

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO. ___A-83___          SEPTEMBER TERM 2013

ON CERTIFICATION TO ___Appellate Division, Superior Court___


STATE OF NEW JERSEY,

      Plaintiff-Respondent,

        v.

MARC A. OLIVERO,

      Defendant-Appellant.


DECIDED          June 29, 2015
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Justice Fernandez-Vina_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |