**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2244-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRIAN T. RICHARDSON, a/k/a
CAMERON L. CONNOR,
BRANDON L. MYERS, and
BRIAN T. RICHARDSON,

     Defendant-Appellant.

_____

Submitted August 2, 2021 – Decided August 18, 2021

Before Judges Sabatino and Rose.

On appeal from the Superior Court of New Jersey, Gloucester County, Law Division, Indictment No. 18-09-0767.

Joseph E. Krakora, Public Defender, attorney for appellant (Zachary Markarian, Assistant Deputy Public Defender, of counsel and on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following denial of his motion to dismiss a one-count Gloucester County indictment for third-degree burglary, N.J.S.A. 2C:18-2(a)(1), defendant Brian T. Richardson pled guilty as charged. Pursuant to the terms of the negotiated plea agreement with the State, defendant reserved his right to appeal the January 25, 2019 Law Division decision denying his motion. See R. 3:9-3(f). Defendant was thereafter sentenced to a two-year noncustodial probationary term.

The sole issue presented on this appeal is whether the trial court erred in concluding the State "presented 'some evidence' to the grand jury that [defendant] entered a 'structure' within the meaning of N.J.S.A. 2C:18-1." More particularly, defendant asserts in a single point:

> A CONSTRUCTION SITE ON A PUBLIC SIDEWALK IS NOT A "STRUCTURE" WITHIN THE MEANING OF THE BURGLARY STATUTE. THE TRIAL COURT SHOULD HAVE DISMISSED THE INDICTMENT.

In his reply brief, defendant clarifies:

> THE SIDEWALK WAS NOT A STRUCTURE BECAUSE, UNLIKE THE FENCED, LOCKED, AND GUARDED LOT IN [STATE V.] OLIVERO, [221 N.J. 632 (2015),] IT WAS NOT "SECURED FROM THE PUBLIC."

2

Having considered defendant's arguments in view of the governing law and the minimal facts adduced at the grand jury hearing, we reverse.

The undisputed facts before the grand jury were elicited through the sole testimony of Deptford Township Police Department Officer Matthew Umba. On August 8, 2017, Umba and other officers were "patrolling the area of Cooper Village" when defendant and co-defendant, Kevin Short,[1] were observed loading a black cast iron pipe "into the bed of a pickup truck," which contained numerous similar pipes. Police later determined the pipes were taken "from a pallet on a sidewalk on Morris Avenue."

The remainder of the grand jury presentation consisted of the following brief exchange:

> PROSECUTOR: And was that pallet located in an active construction zone <u>which was closed off to the public</u>?
>
> UMBA: Yes, ma'am.
>
> PROSECUTOR: Was Mr. Richardson taken into custody on the scene there?
>
> UMBA: Yes, ma'am.

---

[1] According to defendant's merits brief, Short pled guilty to fourth-degree criminal trespass, N.J.S.A. 2C:18-3(c), prior to indictment. Short's judgment of conviction is not contained in the record on appeal; he is not a party to this appeal.

PROSECUTOR: And was he taken back to the station and issued Miranda[2] [sic]?

UMBA: Yes, ma'am.

PROSECUTOR: After Miranda, [sic] did Mr. Richardson state that Mr. Short had driven him to the construction site where both men loaded ten pieces of cast iron piping into the pickup truck?

UMBA: Yes, ma'am.

PROSECUTOR: And did he indicate that neither one of them really had permission to do that from the construction site?

UMBA: Yes.

[(Emphasis added).]

We begin our review with well-settled principles. "An indictment is presumed valid . . . ." State v. Feliciano, 224 N.J. 351, 380 (2016). A trial court tasked with a motion to dismiss an indictment therefore must determine "whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 13 (2006); see also State v. Saavedra, 222 N.J. 39, 56-57 (2015). If the State has presented "some evidence establishing each element of

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2244-19

the crime to make out a prima facie case" the indictment should stand. Morrison, 188 N.J. at 12. Conversely, "[t]he absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal." Ibid. (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)).

An appellate court reviews a trial court's decision denying a motion to dismiss an indictment for abuse of discretion. Saavedra, 222 N.J. at 55. However, a trial judge's legal interpretations are subject to de novo review. State v. Grate, 220 N.J. 317, 330 (2015). We therefore conduct a de novo review of issues concerning statutory construction, including the meaning of a statute's terms. Olivero, 221 N.J. at 638.

N.J.S.A. 2C:18-2 states in relevant part: "A person is guilty of burglary if, with purpose to commit an offense therein or thereon he: (1) Enters a . . . structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter[.]" N.J.S.A. 2C:18-1 defines "structure" as "any building, room, ship, vessel, car, vehicle or airplane, and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present."

In Olivero, our Supreme Court considered whether a parking lot that was locked, fenced-in, and adjacent to a manufacturing warehouse constituted a "structure" under the burglary statute. 221 N.J. at 634-35. In that case, the manufacturing company's security guard called the police after observing a chain and padlock on the gate of the fenced facility had been cut. Id. at 635. Upon their arrival, the police apprehended the defendant and his brother in a pickup truck as they were driving toward the facility's main gate. Ibid. Inside the truck, the police found metal printing rollers taken from the fenced-in lot outside the warehouse, the padlock, and bold cutters. Ibid.

After the State presented its case in Olivero, the defendant moved for judgment of acquittal, contending the State failed to prove the parking lot met the definition of a "structure" under N.J.S.A. 2C:18-1. Id. at 636. The trial court rejected defendant's argument, finding "the fenced-in area was a prohibited space not open to the public," and "a place adapted for carrying on [the manufacturing company]'s business." Ibid. This court affirmed, holding the parking lot satisfied the definition of a structure "because it was secured from the public." Ibid. A unanimous Supreme Court affirmed our decision. Id. at 645.

A-2244-19

In reaching its decision, the Court surveyed the legislative history underscoring the burglary statute, and the dictionary definitions of the statute's terms. Id. at 640-43. Pertinent to this appeal, the Court reasoned:

> To adapt a lot to serve as a storage lot, for example, the lot would have to be secured from the public. We therefore find that a storage lot can be a "structure" for purposes of the burglary statute as a place adapted for business when it is specifically used for conducting commercial activity and is secured from the public.
>
> [Id. at 643 (emphasis added).]

The Court also distinguished our prior decision in State ex rel. L.E.W., 239 N.J. Super. 65, 74 (App. Div. 1990). In that case, decided under the defiant trespass statute, N.J.S.A. 2C:18-3(b), we held a convenience store's parking lot did not satisfy the definition of a "structure" under N.J.S.A. 2C:18-1 because the lot "was open to the public" and "available so that invitees could park their cars in order to shop at the convenience store." Olivero, 221 N.J. at 643 (citing L.E.W., 239 N.J. Super. at 70).

By contrast, the Court in Olivero concluded the manufacturing company's parking lot "is never open to the public. Rather it is fenced-in and protected by both a padlock and a security guard." Olivero, 221 N.J. at 643. The Court found the facts presented in Olivero were more closely aligned with two out-of-state cases: (1) Commonwealth v. Hagan, 654 A.2d 541, 543 (Pa. 1995) (holding a

7

"fenced-in storage lot" satisfied the definition of a structure under Pennsylvania's burglary statute); and State v. Hill, 449 N.W.2d 626, 626-28 (Iowa 1989) (holding a "fenced-in enclosure behind an automobile parts store" met the definition of a structure under Iowa's burglary statute). Id. at 644-45.

Thereafter, the Model Jury Charge on burglary was revised to include the following optional "[c]harge when appropriate": "A structure includes a place adapted for business when it is specifically used in conducting commercial activity and is secured from the public whether or not a person is actually present." Model Jury Charges (Criminal), "Burglary in the Third Degree (N.J.S.A. 2C: 18-2(a))" (rev. March 14, 2016) (emphasis added).

In the present matter, defendant's dismissal motion was premised upon the lack of "enclosure" here, where the tools were allegedly stolen from an "area on a public street." Defendant argued that under Olivero, the Court "painstakingly described the area" at issue and held the "fenced-in and locked lot was a place adapted for carrying on business."

Following argument on January 18, 2019, the judge issued an oral decision, denying defendant's motion. In sum, the judge found that whether the area in question met the statutory definition of a structure was a jury question. The motion judge thereafter amplified his legal conclusions and factual findings

in a January 25, 2019 written decision. Finding "the State presented at least 'some evidence' as to each element of the offense charged," the judge concluded "whether the construction zone meets the definition of a structure as a place adapted to carry on business is for the jury to decide as the finder of fact, as it is an element of the crime charged." The court's oral and written decisions did not expressly address the "secured from the public" requirement, but instead focused on other elements of the statute.

On appeal, defendant reprises his argument that the public sidewalk at issue was not sufficiently "secured" within the meaning of Olivero. To support his argument, defendant contends the sidewalk was temporarily "closed off to the public" by signs "merely . . . stating that the street was closed." The State maintains "the grand jury could reasonably infer that there was some physical barrier or visible indication, impediment or deterrent to the general public" and, as such defendant was on notice that he was "barred from entering this construction zone." The State further contends the area of the sidewalk at issue "apparently [was] being used to store oversized or extra materials."

However, the State presented no evidence to the grand jury as to how the area in question was "closed off to the public." In that regard, the State failed to elicit testimony as to whether the area was "secured from the public." Olivero,

221 N.J. at 644-45. Indeed, the signage referenced by defendant before the motion judge and in his merits brief on appeal seemingly references the incident report, but that information was not presented to the grand jury. Further, as noted in defendant's merits brief, during his factual basis in support of his guilty plea, defendant clarified that the sidewalk at issue was closed off by "sawhorses on either side of the street saying the street was closed." That information – although insufficient to meet the Court's definition of "secured" under Olivero – also was not presented to the grand jury.

Based on our de novo review of the motion judge's legal interpretation of the burglary statute, we conclude the State failed to present prima facie evidence before the grand jury that the area of the sidewalk at issue constituted a structure within the statutory definition. Accordingly, we reverse the judge's decision, vacate defendant's guilty plea, and remand the matter to the trial court. In doing so, we dismiss the indictment without prejudice to the State's attempt to represent the matter before another grand jury.

Reversed and remanded. We do no retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2244-19